SHOE CORPORATION OF AMERICA, A CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 60554. Filed November 20, 1957.

*David Ginsberg, Esq.*, and *Robert J. Bird, Esq.*, for the petitioner.
*Lyman G. Friedman, Esq.*, for the respondent.

BRUCE, *Judge:* The respondent determined the following deficiencies in the income tax of petitioner:

| Year | Deficiency |
|------|-----------|
| 1951 | $1, 647. 30 |
| 1952 | 118, 778. 73 |

The only issue remaining for decision involves respondent's determination that certain litigation expenses incurred by petitioner in 1952 in a stockholder's suit against petitioner and its officers and directors did not constitute an allowable deduction under the provisions of section 23 (a) of the Internal Revenue Code of 1939.

### FINDINGS OF FACT.

The stipulated facts are incorporated herein by this reference.

The petitioner is an Ohio corporation with its office and principal place of business in Columbus, Ohio. At all times material herein its principal business has been the manufacture and sale of shoes at retail. Petitioner's Federal income tax returns for the calendar years 1951 and 1952 were filed with the director of internal revenue at Columbus, Ohio.

Prior to December 26, 1947, the petitioner was known as the Schiff Company. On that date petitioner's name was changed to Shoe Corporation of America.

Petitioner's outstanding capital stock has consisted of no-par common stock which was and still is actively traded on the American Stock Exchange. In 1950 a new cumulative preferred stock was created and 4,364 shares were issued. At all times material herein, with one exception, petitioner's officers and directors have been stockholders of petitioner and all have actively participated in the conduct and management of petitioner's business, which business has been successful and profitable.

In October 1947, petitioner's management formulated a plan of recapitalization of petitioner's outstanding stock. One of the stated purposes of the proposed plan of recapitalization was to continue the existing management in control of petitioner's business by the creation, issuance, and sale of class B common shares without par value. At this time the authorized capital stock of petitioner consisted of 500,000 shares of no-par common stock, of which 222,750 were outstanding, and 50,000 cumulative preferred shares, none of which were outstand-

ing. The recapitalization plan provided for an increase in petitioner's authorized capital stock to consist of 250,000 shares of cumulative preferred stock, $100 par value, 2,000,000 class A shares, and 600 class B shares. The outstanding 222,750 shares of common stock were to be split 2 for 1, and exchanged for 445,500 shares of class A. The preferred stock and the class A were to have full voting rights and were jointly entitled to elect 7 directors out of a proposed board of 12 directors. The new class B stock, consisting of 600 shares, was to have identical dividend and liquidation rights with the class A stock, and in addition it would have the sole right to elect 5 directors out of the board of 12 directors, and would have such veto power, voting as a class, as was granted by the Ohio law. The plan further provided that the 600 shares of class B stock would be issued at a price per share equal to the price at which a share of class A stock was then selling on the New York Curb Exchange, and that the 600 shares of class B stock be issued in varying amounts to the then members of petitioner's management and their families, all of whom were related to petitioner's president, Robert W. Schiff. At this time 30 per cent of petitioner's stock was owned by the Schiff family.

At the direction of petitioner's president a special meeting of shareholders of the petitioner was called for November 3, 1947. A proxy statement prepared by petitioner's then management was mailed to all shareholders of record. As required by law a draft of the proxy statement was submitted to the Securities and Exchange Commission prior to its issuance to the shareholders. The Securities and Exchange Commission issued a deficiency letter criticizing the plan with respect to the creation and issuance of the 600 shares of class B stock to the "Schiff family," and pointed out that the management was attempting to obtain five-twelfths of the voting power for the election of directors and a veto power with respect to matters requiring a majority vote of all classes of stock, at a cost of some $10,000, whereas the purchase at then market values of common shares having five-twelfths of the voting power would involve an investment of approximately $3,250,000.

At least two of petitioner's stockholders protested to petitioner's management about the proposed plan of recapitalization and one shareholder filed suit in the Ohio courts to enjoin the issuance of the class B common stock.

At a special meeting of petitioner's shareholders on November 3, 1947, the plan of recapitalization as outlined in the proxy statement was approved by a majority of petitioner's shareholders. Subsequently, petitioner's management filed with the secretary of state of the State of Ohio amended articles of incorporation providing for the carrying out of the plan for recapitalization of petitioner's stock.

Margaret K. Kahn has been a stockholder of petitioner since 1941. On January 2, 1948, she filed a derivative suit in the United States District Court for the Southern District of Ohio against petitioner's officers and directors to restrain them from the issuance of any class B stock as authorized by the proposed plan of recapitalization. The petitioner was named as a defendant. Subsequently Margaret filed a second amended and supplemental complaint against the same defendants seeking to recover certain profits and assets alleged to be improperly diverted from petitioner. In the second amended and supplemental complaint the plaintiff alleged, among other things:

TWENTY-FIRST: That the defendant directors, in causing the defendant Shoe Corporation to create the said new issue of 600 shares of Class B common stock, and in modifying the original terms and conditions of said stock as hereinbefore set forth, and in proposing to sell the said stock to the individual defendants and other members of the Schiff family at the nominal price arbitrarily fixed by them, did not act and are not acting in the best interests of the defendant Shoe Corporation and all of its stockholders for a legitimate business and corporate purposes, but were and are prompted by selfish motives and solely for the improper and illegal purpose of converting themselves in effect from minority to majority stockholders and securing a perpetual control and domination of the defendant corporation and its subsidiaries for their own private benefit and for the benefit of said Schiff family.

TWENTY-SECOND: That if the issuance and sale of said 600 shares of Class B common stock as proposed is not enjoined, the individual defendants and those associated with them will be guilty of breach of duty as follows:

(a) * * * That by the proposed device of issuing the Class B common stock for the sum of approximately $9,600.00, the defendants would in effect obtain the voting power of a majority of the voting stock and would profit to the extent of approximately $2,000,000 at the expense of the defendant corporation and all its stockholders.

* * * * * * *

TWENTY-FOURTH: That unless the defendants are enjoined from issuing and selling the said 600 shares of Class B common stock as above set forth, the injury to the corporation will be irreparable.

A temporary restraining order against the issuance of any of the class B stock under the proposed plan was issued by the District Court.

Subsequent to the filing of the Kahn suit petitioner's management adopted a modification of the plan of recapitalization. On July 17, 1948, the amended plan of recapitalization was submitted to petitioner's shareholders at a meeting called for that purpose. A majority of petitioner's shareholders approved the modified plan of recapitalization. Petitioner's amended articles of incorporation embodying the changes approved by the shareholders on July 17, 1948, were filed with the secretary of state for the State of Ohio.

The litigation commenced by Margaret K. Kahn in January 1948 was subsequently tried in June 1950 and June 1951. Findings of fact and conclusions of law were filed January 23, 1952. The opinion of

the District Court was filed on the same day and is reported in 105 F. Supp. 973. The findings of fact of the District Court included, among other things, the following:

15. The avowed purpose of the plan was to "enable the Schiff interests to elect a majority of the Board."

\*        \*        \*        \*        \*        \*        \*

31. The fair and reasonable value of the 600 shares of Class B stock to be issued to the "Schiff family" as proposed under either the original or amended plans was substantially in excess of the consideration fixed by the management.

32. The consideration for which it was proposed to issue the 600 shares of Class B stock to members of the "Schiff family" under the amended plan as well as the original plan was grossly inadequate and unfair.

33. The original and amended plan for the issuance of the 600 shares of Class B stock was primarily a plan to vest absolute control in the Schiff family. Even if viewed as a plan for remuneration for officers and employees, as urged by the defendants, it was fraudulent and unfair in the following respects:

(1) It was not a general non-discriminatory incentive plan for the benefit of officers and employees based on merit, but was specifically based on relationship to Robert W. Schiff.

(2) The true value of the Class B stock was far in excess of the value of the services previously rendered by the proposed recipients or their prospective worth.

(3) The proposed recipients of the 600 shares of the Class B stock having already been well paid for their services, were not entitled to the Class B stock either on the basis of past services or prospective worth.

(4) There was no obligation on the part of any recipient of the Class B stock to serve Shoe Corp. any longer than he desired; nor could Shoe Corp. demand that he serve the company after the receipt of the B shares.

The District Court reported conclusions of law in part as follows:

5. The avowed and primary purpose of the original and amended plan for the creation and issuance of 600 shares of Class B stock was to give the Schiff family a majority of the directors without having to buy a majority of shares. The effect of the original and amended plan was to deprive a shareholder, who did not consent, of his proportionate and equal right to control the corporation and to change its management and to vest all control of the corporation in the Schiff family and particularly in certain self-selected members of this family. Directors may not do this. It is [in]equitable and involves a breach of the fiduciary duties which they owe all the shareholders.

6. The plan for the creation and issuance of the 600 shares of Class B stock in its amended form as well as in its original form, is illegal, ultra vires, unfair, unconscionable and is in violation of the fiduciary obligation owed by the directors to the other shareholders.

\*        \*        \*        \*        \*        \*        \*

CONCLUSIONS OF LAW WITH RESPECT TO ALL CAUSES OF ACTION

The Court retains jurisdiction for the purpose passing on any application by the attorneys and counsel for the plaintiff and accountant for allowances of fees, expenses and disbursements, and directing that such allowances as shall be found by the Court to be fair and reasonable shall be assessed as costs against and paid by defendant Shoe Corporation of America and be recoverable in the same manner as statutory costs.

## The opinion of the District Court is in part as follows:

The evidence fails to reveal any intentional dishonest or deceptive conduct or motives on the part of the officers and directors. It is possible and probable that they confused the Schiff family interests and the shareholders' interests and thought those interests identical. They probably believed they were doing what was best for all. But in fact and in law those interests were not the same. And as between the two groups the obligation of the directors was exclusively to the shareholders. The invalidity of their acts consists of their trying to serve conflicting interests and thus dividing or diverting their fiduciary obligation.

The court can follow the statements and arguments of the Defendants and approve most of them. But when the plan reveals that Class B stock is to be issued at a price fixed by the directors and distributed to officers and employees, and in quantities, according to the discretion of the directors, without uniform rule, or limitation, and the directors proposed to issue it to themselves, then the judicial conscience is shocked and the court's approval can proceed no further. It is such a clear violation of that ancient equitable principle which prohibits fiduciaries from trafficking with trust estates to their own advantage, that even the approval of a majority of shareholders can not justify it, as long as there is one shareholder who objects.

The prime obligation of directors is to afford the corporation good management. * * *

Even if it be conceded that the Schiff family management has been good and that the reorganization plan is an honest effort to give security to that management, what assurance can anyone give that it will be good a decade from now? If it should be, the same forces that sustain it now will support it then; and if it is not good then, it ought not be continued. If it should be incompetent or bad, it would be a detriment to the members of the Schiff family as well as to other stockholders.

If by some arbitrary contrivance unworthy men are maintained in office, they are not thereby saved from the consequences of their failure, but the evil consequences are increased and extended to innocent persons. It is sound corporation policy to make management rely for its continuance on its worth.

\*          \*          \*          \*          \*          \*          \*

The evidence is quite clear that the actual value of the Class B stock is more than the price fixed for it by the plan. Certainly if the purchasers of the Class B stock went into the market to purchase an amount of stock carrying $5/_{12}$ths of the voting power of the corporation they would have to pay much more than the amount set in the plan. * * *

\*          \*          \*          \*          \*          \*          \*

The directors of a corporation act in a strictly fiduciary capacity. Their office is one of trust and they are held to the high standard of duty required of trustees. They cannot be permitted so to manage the affairs of their cestui que trust that the system of business corporations, by which so large a part of the world's work is now conducted, "may become a system of frauds." Peabody v. Flint, 6 Allen, Mass., 52, 55; European & North American Railway v. Poor, 59 Me. 277. Corporate directors cannot manipulate the property, of which they have control in a trust relation, primarily with the intent to secure a majority of the stock or of directors in any particular interest. This is not a fair exercise in good faith of the power with which they are clothed. Punt v. Symons, 1903, 2 Ch. 506–515. This is especially true when the issuance of the stock is for the express purpose of retaining in power the very persons who

authorize the issue, and who are therefore distinctly benefited to the disadvantage of another and substantial part of their stockholders—Gray v. Portland Bank, 3 Mass. 364.

\* \* \* \* \* \* \*

Costs, including plaintiff's expenses and reasonable attorneys' and accountant's fees, to be taxed against the defendant Shoe Corporation.

Subsequent to the filing of the opinion of the District Court counsel for the plaintiff (Kahn) filed their application for fees and expenses, including accountant's fees and expenses. The amount of fees and expenses requested by counsel for plaintiff was approximately $400,000. This amount was contested by the corporate defendant and a hearing on the matter was held. As a result a decree was issued by the District Court which provided in part as follows:

1. That the defendant Shoe Corporation of America and its directors be and they are hereby permanently enjoined from issuing all or any part of the 600 shares of Class B stock as now authorized and provided in its Articles of Incorporation or its Code of Regulations, and the defendant Shoe Corporation of America be and it hereby is directed to take such corporate action as may be necessary to eliminate from its Articles of Incorporation and Code of Regulations all authority to issue or vote the said 600 shares of Class B stock or any part thereof.

2. That the second amended and supplemental complaint be dismissed with respect to the second and third causes of action.

3. That the sum of $125,000.00 be and the same hereby is fixed and allowed as the reasonable sum to be paid to the attorneys for the plaintiff, and the sum of $9,500.00 be and the same hereby is fixed and allowed as the reasonable sum to be paid to Alexander Grant & Company, the accountant for the plaintiff, in full compensation to each of them for their services which have been rendered by them in this action, together with the expenses and disbursements in the sum of $1,995.09 for the attorneys and the expenses and disbursements in the sum of $1,420.10 for the accountant, and that said allowances of fees, expenses and disbursements shall be and hereby are assessed as costs against the defendant Shoe Corporation of America, that no part of such allowance[s] are assessable or shall be assessed against the other defendants herein, and judgment against said Shoe Corporation of America is hereby rendered therefor.

4. That defendant Shoe Corporation of America shall pay the amounts fixed and allowed herein as directed within fifteen days from the entry of this decree.

No appeal was taken from the decision of the District Court and no effort has been made to revive the plan of recapitalization since the decision of the District Court in 1952.

In computing petitioner's taxable income for the calendar year 1952 petitioner claimed as a deduction the sum of $140,975.87, representing the legal and accounting expenses awarded plaintiff's counsel in the Kahn litigation.

#### OPINION.

The question presented is whether litigation expenses in the amount of $140,975.87 paid by petitioner in 1952 pursuant to a decree of the United States District Court for the Southern District of Ohio

are deductible under the provisions of section 23 of the Internal Revenue Code of 1939. The litigation expenses involved represent the legal and accounting fees and expenses of counsel and accountant for a minority stockholder, plaintiff in a stockholder's suit against petitioner, its officers, and directors, awarded as costs and assessed against the petitioner by the District Court.

Petitioner contends that such fees and expenses are deductible as ordinary and necessary business expenses within the meaning of section 23 (a) (1) (A) of the Internal Revenue Code of 1939,[1] or, in the alternative, as costs of a plan of recapitalization deductible as a loss in 1952 upon abandonment of the plan.

Respondent's position is that such fees and expenses are not deductible because (1) they were not petitioner's but somebody else's fees, (2) they are not ordinary in or related to petitioner's business, and (3) such fees and expenses constituted capital expenditures.

The parties have stipulated that the suit out of which the payments involved arose was a derivative action. The action was instituted by Margaret K. Kahn, a minority stockholder, "on her own behalf and on behalf of all other stockholders similarly situated," against the petitioner corporation, its officers, directors, and certain other individuals, to enjoin the issuance and sale of certain class B stock, alleged to be unlawful, ultra vires, and in violation of the trust obligations of the directors, and also seeking an accounting by certain of the individual defendants with respect to certain "corporate opportunities" and real estate transactions. After a very hard fought and long, drawn-out trial the District Court dismissed the second and third counts of the complaint seeking an accounting by the individual defendants stating that the evidence failed to reveal any intentional or deceptive conduct or motives on the part of the officers and directors, that it was possible and probable that they confused the Schiff family's interests and the shareholders' interests. The District Court found for the plaintiff, however, with respect to the first count and granted a permanent injunction against the issuance of the class B stock, concluding, among other things, that the avowed and primary purpose of the plan for the creation and issuance of such class B stock was to give the Schiff family a majority of the directors without having to buy a majority of shares, that the effect of such plan was to deprive a shareholder, who did not consent, of his proportionate and equal right to control the corporation and to change its management and to vest all control of the corporation in the Schiff family and particularly

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

(a) EXPENSES.—

(1) TRADE OR BUSINESS EXPENSES.—

(A) In General.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *

in certain self-selected members of this family. The court held that the plan for the creation and issuance of the 600 shares of class B stock was illegal, ultra vires, unfair, unconscionable, and in violation of the fiduciary obligation owed by the directors to the other shareholders. Both in his opinion and in his final conclusions of law, the court directed that plaintiff's costs and reasonable attorneys' and accountant's fees and expenses be assessed against and paid by the defendant Shoe Corporation of America, the petitioner herein. In the final decree, the reasonable fees and expenses of plaintiff's attorneys and accountant were determined to be $140,975.87 and petitioner paid such amount.

Respondent's argument that the fees and expenses involved herein were not petitioner's but somebody else's is clearly without merit. The District Court, in his conclusions of law, opinion, and final decree, directed that such fees and expenses should be taxed as costs and paid by the defendant Shoe Corporation of America. In so doing he was following the general rule that where the result of a stockholder's suit inures to the benefit of the stockholders generally the fees of the attorney for the parties instituting the action are taxed against the corporation on the theory that the corporation has been benefited and should pay the reasonable value of the services rendered to it. *Charles Kay Bishop*, 25 T. C. 969 (1956). See also 13 Fletcher, Cyc. Corp. sec. 6045. This is also the general rule even where no pecuniary benefit was sought and no fund recovered. With few exceptions, attorneys' fees and other expenses incurred by successful litigants in actions involving internal affairs of a corporation, but wherein no pecuniary benefit was sought, have been charged against the corporation. See Note 39 A. L. R. 2d 580, citing *Marron* v. *Wood*, 55 N. M. 367, 233 P. 2d 1051 (1951); *Runswick* v. *Floor*, 116 Utah 91, 208 P. 2d 948 (1949); *Long Park, Inc.* v. *Trenton-New Brunswick Theatres Co.*, 274 App. Div. 988, 84 N. Y. S. 2d 482 (1948), appeal dismissed without opinion 299 N. Y. 718, 87 N. E. 2d 126; *Abrams* v. *Textile Realty Corporation*, 97 N. Y. S. 2d 492 (1949); *Holthusen* v. *Edward G. Budd Mfg. Co.*, 55 F. Supp. 945 (E. D. Pa., 1944).

The District Court not only found the plan for the creation and issuance of the class B stock illegal, ultra vires, and in violation of the fiduciary obligation owed by the directors to all the shareholders, but also found that there was no assurance, even if it be conceded that the Schiff family management had been good, that such management would continue to be good. There was no obligation on the part of any recipient of the class B stock to serve the Shoe Corporation any longer than he desired nor could the corporation demand that he serve the company after the receipt of the class B shares. Thus the plan might result in depriving the corporation of competent management.

Nor is there any merit in respondent's contention that the fees and expenses were not ordinary in or related to petitioner's business.

As was said by the Supreme Court in *Commissioner* v. *Heininger*, 320 U. S. 467 (1943), holding as "ordinary and necessary" expenses of unsuccessfully litigating a suit to set aside a fraud order of the Post Office Department:

It is plain that respondent's legal expenses were both "ordinary and necessary" if those words be given their commonly accepted meaning. * * * Surely the expenses were no less ordinary or necessary than expenses resulting from the defense of a damage suit based on malpractice, or fraud, or *breach of fiduciary duty*. Yet in these latter cases legal expenses have been held deductible without regard to the success of the defense. [Emphasis supplied.]

Here the expense arose out of the unsuccessful defense of a stockholder's suit for breach of a fiduciary duty. As pointed out above, the fees and expenses were taxed against the petitioner by the District Court in accordance with the general rule in such cases. Contrary to respondent's argument, we find no evidence in the record sufficient to establish that the taxing of the fees and expenses of the plaintiff's attorneys and accountant against the corporate defendant was the result of collusion on the part of any of the parties. The fact that the same attorneys represented the individual defendants as well as the corporation and that no objection was made to the taxing of such fees and expenses against the corporation is of itself not sufficient. We must assume that the District Court gave full consideration to the question of who should pay as well as to how much. Payment of a judgment or decree rendered against it by a court of competent jurisdiction, which does not appear to have been collusive or against public policy, is not only an ordinary but also a necessary expense of the corporation. Cf. *Caldwell Co.* v. *Commissioner*, 234 F. 2d 660 (C. A. 6, 1956), reversing 24 T. C. 597 (1955).

Finally, we find no merit in respondent's contention that such fees and expenses constitute capital expenditures. The stockholders' suit out of which the payments arose was not one to defend, protect, or perfect *title* to property but was one to enjoin the carrying into effect of a plan of recapitalization which the District Court found would constitute a breach of the fiduciary obligation which the directors owed to all the shareholders and which, if carried into effect, would vest all control of the corporation in the Schiff family, and might result in depriving the corporation of competent management.

Respondent is apparently confusing expenditures incident to the defense, protection, or perfection of title to property with expenses paid or incurred for the management, conservation, or maintenance of property held for the production of income. Sec. 23 (a) (2),

I. R. C. 1939.[2] On brief he states that "[t]he action out of which these fees arose was one brought to prevent the diminution of the value and rights of petitioner's Class 'A' stock. It was that protection of property which prompted Mrs. Kahn's action * * *." And further, "Her suit was brought to protect her property, her Class 'A' stock." This indicates conservation of property rather than defense of title.

Obviously, had Mrs. Kahn been required to pay the fees and expenses of the attorneys and accountant she would have been entitled to deduct such expenses from her gross income under section 23 (a) (2). However, apparently because he considered the action beneficial not only to Mrs. Kahn but to all other shareholders as well as the corporation, the District Court assessed such fees and expenses as costs and directed the corporation to pay them. This is not the situation presented in the cases cited by respondent, of which *Bowers* v. *Lumpkin*, 140 F. 2d 927 (C. A. 4, 1944), certiorari denied 322 U. S. 755 (1944), and *Garrett* v. *Crenshaw*, 196 F. 2d 185 (C. A. 4, 1952), are examples, and respondent has not called our attention to any cases involving facts similar to those in the instant case.

Accordingly, we hold that the amount paid by petitioner as costs pursuant to the decree of the District Court is deductible as an ordinary and necessary business expense within the meaning of section 23 (a) (1) (A) of the Internal Revenue Code of 1939. Our holding on this issue makes unnecessary a consideration of petitioner's alternative contention.

*Decision will be entered under Rule 50.*

---

[2] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

(a) EXPENSES.—

* * * * * * *

(2) NON-TRADE OR NON-BUSINESS EXPENSES.—In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.