B. T. HARRIS CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 55088.   Filed June 18, 1958.

*Rosemary Harris* (*an officer*), for the petitioner.
*John M. Doukas, Esq.*, for the respondent.

ATKINS, *Judge:* The respondent determined a deficiency in the petitioner's income tax for the calendar year 1950 in the amount of $4,628.29. By amended answer the respondent claims a further deficiency of $7,350. The question for decision is whether certain legal fees paid by the petitioner in connection with a suit by stockholders are deductible as ordinary and necessary business expenses.

FINDINGS OF FACT.

Some of the facts are stipulated and are incorporated herein by this reference.

The petitioner is a corporation organized under the laws of the State of Delaware, on April 1, 1921, with its principal place of business in Stamford, Connecticut. It filed its corporation income and excess profits tax return for the calendar year 1950 with the collector of internal revenue for the district of Connecticut.

Since 1933 the authorized capital stock of the petitioner has consisted of 65,000 shares of no-par voting common stock and 15,000 shares of nonvoting no-par class A stock.

Most of the common stock of the petitioner had been held by Benjamin Harris who died in 1927. By his will the stock was placed in trust for the benefit of his widow, Minnie Harris, for life. At her death the remainder was to be distributed equally among his three daughters, Rosemary, Betty, and Thelma. The widow, Minnie Harris, died on August 23, 1944.

Prior to October 26, 1944, the issued and outstanding common stock of the petitioner amounted to 41,843 shares held as follows:

| Name | Number of shares |
|---|---|
| The Fidelity Title and Trust Co., Trustee, Estate of Benjamin Harris, Deceased | 36,606 |
| Minnie Harris (Deceased) The Fidelity Title and Trust Company, Executor, Estate of Minnie Harris | 3,500 |
| Bennett E. Glazer | 1,677 |
| Others | 60 |
| Total | 41,843 |

On March 20, 1945, pursuant to the will of Benjamin Harris, the 36,606 shares of common stock of the petitioner held in trust were distributed equally among the three daughters of Benjamin Harris, 12,202 shares each.

One of the daughters, Thelma, was married to Bennett E. Glazer who was a director of the petitioner and served as president from 1927 to 1951.

At a meeting of the board of directors of the petitioner held on October 26, 1944, Bennett E. Glazer made claim for payment of arrearages in salary for the period 1932 to 1944, totaling $17,923.24, on the

ground that during those years he had not drawn the full $10,000 yearly salary which had been authorized for him in 1929 and which salary had never been reduced. He stated that during this time he had refrained from drawing the full salary because of the financial condition of the company, but that he considered that he was entitled to it upon demand when the condition of the company improved, although he had not caused the arrearages to be placed upon the books.

At the same meeting Glazer outlined the services which he had rendered for the corporation and requested that the board of directors give him an interest in the common stock of the company in the amount of 20,000 shares, or in such amount as the directors saw fit. He requested that if the amount given to him should be less than 20,000 shares, he be permitted to purchase up to 20,000 shares for an amount that he and the directors might deem fair and adequate. He stated that this was the only basis on which he would continue to serve as president. He further stated that the book value did not reflect the true value and that in his opinion it had no value, but that he had recently purchased 1,667 shares at $1 per share.

The board of directors then discussed the matter of whether Glazer had waived his claim to the full amount of salary and the fact that some portion of the claim might be barred by the statute of limitations. The company's attorney advised that a reasonable compromise would be desirable from the standpoint of the corporation. Thereupon a resolution was adopted to the effect that the corporation should offer to compromise the claim for salary arrearages in the amount of $17,923.24 for the sum of $10,000, to be payable in installments over a 4-year period. It was also resolved that Glazer be thereafter paid the full amount of salary theretofore voted to him at the rate of $10,000 per annum.

The minutes recited that after a general discussion of Glazer's service the directors agreed that the incentive of common stock ownership by Glazer would be of value to the corporation and that his request for a common stock interest was reasonable and proper and that they agreed that it would be a detriment to the corporation if Glazer left the company. The directors discussed the question whether the stock should be given to Glazer or sold to him. The company's attorney advised the directors that under the certificate of incorporation the board of directors was authorized to issue stock of any class for such consideration as the board might fix. He further advised that the board of directors of a Delaware corporation could legally issue stock for past services. A resolution was adopted which recited that:

in consideration of the loyal and faithful service which has resulted in large savings to the corporation, and improvement in the management, operation and in the good-will of the corporation, and in consideration of the fact that Mr. Glazer, in the opinion of the Board of Directors, has not been adequately compensated for his services and for all of the accomplishments, and provided that said Bennett E. Glazer shall also accept, in settlement of his claim for arrears of salary totalling $17,923.24, the sum of $10,000., as voted by the Board of Directors, which the Directors consider as part of the consideration for the issuance of the stock to Mr. Glazer, that the corporation issue to Bennett E. Glazer, if he desire, 20,000 shares of common stock upon payment of $4,000. * * *

The minutes of such directors' meeting recite that the directors recognized that the effect of this acquisition of stock by Glazer would be to give him and his wife together a majority of the common stock, but that this would assure a continuation of the same management which they considered desirable from the standpoint of the company.

Glazer accepted the compromise offer. On October 26, 1944, 20,000 shares of common stock were issued by the petitioner to him for $4,000.

Betty and Rosemary Harris engaged counsel to prosecute a lawsuit against Glazer and the other directors who had taken the action at the directors' meeting of October 26, 1944. On March 8, 1946, they paid attorneys' fees of $3,250 which was to be deemed full payment unless the action was successful, in which event additional fees were to be arranged for.

On April 9, 1946, Betty and Rosemary Harris instituted a civil action in Connecticut naming as defendants the petitioner corporation and all the directors of the petitioner above referred to, including Bennett E. Glazer. The suit sought to declare void the issuance of the 20,000 shares of stock to Glazer and to have such stock canceled; to set aside the indebtedness entered on the petitioner's books for $10,000 for salary arrearages to Glazer; to compel Glazer to account for any receipts on account of such arrearages; and to have the defendant directors "account for their official misconduct in the management and disposition of the funds of the said corporation." The complaint alleged among other things:

That the placing of the alleged claims for salary on the corporation's books as an indebtedness and the issuance of said stock was fraudulent, a violation of law and breach of trust reposed in said directors, and that the same was made in pursuance of a scheme to turn over to the said defendant-director Bennett E. Glazer, in conjunction with his wife's common stock, the control of said corporation, thus depriving the said plaintiffs of their control of said corporation and to fraudulently prevent the plaintiffs from exercising their pre-emptive rights to subscribe or purchase additional common voting stock in proportion to their holdings so that they may preserve their proportionate voice and interest in said corporation, and to benefit personally the holders of class A stock of which the said directors are holders.

The complaint also alleged that the plaintiffs had requested the directors to take the necessary action to correct the situation, but that they had refused.

At a special meeting of the board of directors of the petitioner on April 26, 1946, the president was authorized to employ counsel and take the necessary action for the defense of the lawsuit against the corporation and its directors. A resolution was adopted that all expenses in defending the lawsuit on behalf of the company and its directors were to be paid by the corporation. The attorney for the corporation was present at the meeting and advised the directors that the suit was against the corporation and the directors for conduct relating to the business of the corporation, and that it was proper for the corporation, at the discretion of the directors, to undertake to defend the suit for all the parties and pay the expenses thereof.

On November 7, 1950, the case proceeded to trial and lasted until November 30, 1950, when the parties agreed upon a settlement with the approval of the court. The settlement was approved by the petitioner at a meeting of the board of directors on December 11, 1950. Under the terms of the settlement it was agreed that the 20,000 shares of common stock issued to Glazer were to be returned and canceled and that the petitioner would repay him the $4,000 he paid for the stock. The petitioner was to recognize in full Glazer's claim for back salary and agreed to pay a total of $18,000 in lieu of the $10,000 compromise of October 26, 1944. Betty and Rosemary Harris were to designate their nominee to be elected immediately to serve as an additional director on the board of directors. The other officers and directors were to continue in office until the next annual meeting of the petitioner. The petitioner further agreed to pay an amount of $17,500 as legal fees of the plaintiffs and the same amount as legal fees of the defendants.

The resolution of the corporation adopting the settlement declared it to be for the best interest of the corporation.

In accordance with the terms of the settlement, the legal fees were paid by the corporation.

On its corporation income tax return for the taxable year 1950, the petitioner claimed a deduction for "Legal and Accounting Fees $40,430.72."

In the notice of deficiency the respondent disallowed legal fees in the amount of $17,500 with the explanation:

Legal fees in the amount of $17,500.00 paid by the corporation on behalf of two stockholders, who instituted legal action against the corporation and their officers, are not deemed to be ordinary and necessary business expenses within the meaning of Section 23 (a) (1) of the Internal Revenue Code. * * *

In his amended answer to the petition, the respondent asserted a further deficiency based on an additional disallowance of legal ex-

penses of $17,500, "representing fees paid to attorneys who performed services for the individual benefit of certain directors of petitioner."

The sum of $35,000 representing legal fees paid by the petitioner in connection with the lawsuit instigated by stockholders against the petitioner and its directors constitutes an ordinary and necessary business expense of the petitioner.

OPINION.

The first question for consideration is whether the respondent erred in holding that the amount of $17,500, representing legal fees of Betty and Rosemary Harris in their suit against the petitioner and its directors, which amount was paid by the petitioner pursuant to a compromise agreement approved by the civil court in which the action was brought, did not constitute an ordinary and necessary business expense of the petitioner.

A similar situation and question were presented to this Court in the case of *Shoe Corporation of America*, 29 T. C. 297. There a minority stockholder of a corporation instituted a stockholder's derivative suit against the corporation and some of its officers and directors to enjoin the management from issuing and selling stock to certain managing stockholders of the corporation and their families and to recover certain profits and assets alleged to be improperly diverted from the corporation. It was also alleged that the directors in proposing to sell the stock to this group of stockholders at a nominal price, arbitrarily fixed, were not acting in the best interests of the corporation and its stockholders, but were prompted by the illegal purpose of securing control of the corporation. The court enjoined the proposed action, holding that the effect of the plan would be to deprive other shareholders of their equal right to control the corporation and that it was inequitable and involved a breach of the fiduciary duties which the directors owed the shareholders. The court further found that the stock had a greater value than the price fixed in the plan. The court also fixed the amount to be allowed as reasonable attorney and accountant fees of the plaintiff and assessed them as costs against the corporation. We there held that such fees were deductible as ordinary and necessary business expenses of the corporation, stating in part as follows:

Respondent's argument that the fees and expenses involved herein were not petitioner's but somebody else's is clearly without merit. The District Court, in his conclusions of law, opinion, and final decree, directed that such fees and expenses should be taxed as costs and paid by the defendant Shoe Corporation of America. In so doing he was following the general rule that where the result of a stockholder's suit inures to the benefit of the stockholders generally the fees of the attorney for the parties instituting the action are taxed against the corporation on the theory that the corporation has been benefited and should pay the reasonable value of the services rendered to

it. *Charles Kay Bishop*, 25 T. C. 969 (1956). See also 13 Fletcher, Cyc. Corp. sec. 6045. This is also the general rule even where no pecuniary benefit was sought and no fund recovered. With few exceptions, attorneys' fees and other expenses incurred by successful litigants in actions involving internal affairs of a corporation, but wherein no pecuniary benefit was sought, have been charged against the corporation. See NOTE 39 A. L. R. 2d 580, citing *Marron v. Wood*, 55 N. M. 367, 233 P. 2d 1051 (1951) ; *Runswick v. Floor*, 116 Utah 91, 208 P. 2d 948 (1949) ; *Long Park, Inc.* v. *Trenton-New Brunswick Theatres Co.*, 274 App. Div. 988, 84 N. Y. S. 2d 482 (1948), appeal dismissed without opinion 299 N. Y. 718, 87 N. E. 2d 126; *Abrams* v. *Textile Realty Corporation*, 97 N. Y. S. 2d 492 (1949) ; *Holthusen* v. *Edward G. Budd Mfg. Co.*, 55 F. Supp. 945 (E. D. Pa., 1944).

\*       \*       \*       \*       \*       \*       \*

Nor is there any merit in respondent's contention that the fees and expenses were not ordinary in or related to petitioner's business.

As was said by the Supreme Court in *Commissioner* v. *Heininger*, 320 U. S. 467 (1943), holding as "ordinary and necessary" expenses of unsuccessfully litigating a suit to set aside a fraud order of the Post Office Department:

"It is plain that respondent's legal expenses were both 'ordinary and necessary' if those words be given their commonly accepted meaning. \* \* \* Surely the expenses were no less ordinary or necessary than expenses resulting from the defense of a damage suit based on malpractice, or fraud, or *breach of fiduciary duty*. Yet in these latter cases legal expenses have been held deductible without regard to the success of the defense." [Emphasis supplied.] Here the expense arose out of the unsuccessful defense of a stockholder's suit for breach of a fiduciary duty. As pointed out above, the fees and expenses were taxed against the petitioner by the District Court in accordance with the general rule in such cases. \* \* \*

Finally, we find no merit in respondent's contention that such fees and expenses constitute capital expenditures. The stockholders' suit out of which the payments arose was not one to defend, protect, or perfect *title* to property, but was one to enjoin the carrying into effect of a plan of recapitalization which the District Court found would constitute a breach of the fiduciary obligation which the directors owed to all the shareholders \* \* \*

The situation presented in the instant case is essentially the same as that involved in *Shoe Corporation of America, supra.* While the suit here involved did not proceed to a decision, it resulted in a settlement, approved by the court, under which the petitioner was obligated to pay the legal fees of the plaintiffs. See *Charles Kay Bishop*, 25 T. C. 969. It may be added that the suit involved in the instant case arose out of actions of the directors in the conduct of the affairs of the business. The directors' action regarding the salary arrearages and the sale of the stock arose out of the claim of Glazer for additional compensation as president. Accordingly the suit proximately resulted from the business of the petitioner. On the authority of the *Shoe Corporation* case, we hold that the amount of $17,500 paid to the plaintiffs' counsel in the suit against the petitioner is deductible by the petitioner as an ordinary and necessary business expense.

Since as stated, the suit against the petitioner and its directors arose out of acts of the directors in connection with the conduct of the business of the corporation, it follows that the $17,500 which the petitioner paid in defense of this suit also constituted an ordinary and necessary business expense of the petitioner. *Kornhauser* v. *United States*, 276 U. S. 145, *Commissioner* v. *Heininger*, 320 U. S. 467. See also *Ingalls Iron Works Co.* v. *Patterson*, (D. Ala.) 158 F. Supp. 627, and *Ingalls* v. *Patterson*, (D. Ala.) 158 F. Supp. 627, on this question.

*Decision will be entered under Rule 50.*