**R. Walter GRAHAM and Dorothy H. Graham, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 9079.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 2, 1963.

Decided Jan. 3, 1964.

Harry L. Brown, Washington, D. C. (Alvord & Alvord, Washington, D. C., on brief), for petitioners.

David I. Granger, Attorney, Department of Justice (John B. Jones, Acting Asst. Atty. Gen., Lee A. Jackson and Meyer Rothwacks, Attorneys, Department of Justice, on brief), for respondent.

Before HAYNSWORTH, BRYAN and J. SPENCER BELL, Circuit Judges.

J. SPENCER BELL, Circuit Judge.

This case involves an asserted income tax deficiency for the year 1957. Since May 1954, taxpayer has been a director of the New York Central Railroad Company and has regularly attended meetings of its Board, for which he has received $2,400.00 annually. Central is one of the largest railroad systems in the United States, having assets of about $2,600,-

000,000.00. There is outstanding one class of stock consisting of 6,447,410 shares, of which the taxpayer in March 1954 held 40,000 shares. Since then his holdings have increased to 66,000 shares. In 1954, Central passed its dividend; in 1957, taxpayer received a dividend of $130,626.87. His 40,000 shares had increased in value from a minimum of $745,000.00 to $1,465,000.00 in the year 1957.

In 1954, Alleghany Corporation and 15 individuals including taxpayer, styling themselves an "Ownership" Board, solicited proxies from the stockholders of Central in an effort to unseat the incumbent management. The contest involved business and policy issues relating to the management of the Corporation. In their bid for support, the insurgent group criticized the incumbent Board for ineptitude, contending that it was banker dominated and that its members owned less than ¼th of 1 per cent of Central's stock. They also advocated a specific program of reform. They proposed to install new and economical passenger equipment to help eliminate Central's operating loss in the passenger department; they proposed to sell Central's New York City real estate in order to produce funds with which to buy Central's bonds, then quoted at discount, and thus improve its financial condition; and they proposed to modify the employment contracts of certain key officials of Central. It was agreed by the group that the cost of the proxy solicitation would be borne on the basis of their average stockholdings; that Alleghany would advance the costs; and that if it were not reimbursed by Central, the members of the group would reimburse Alleghany. At the meeting in 1954 the group's slate, including taxpayer, was elected. At the stockholders' meeting the following year, a Board resolution authorizing Central to reimburse Alleghany for the proxy solicitations expense was passed. Thereafter the Board adopted a resolution directing such payment to Alleghany, which was made. This action brought on several derivative stockholder suits against taxpayer's group, which were compromised. Taxpayer's share of this settlement was $9,453.00, which he paid on April 8, 1957, and deducted on his return for that year. Taxpayer seeks to deduct this expense as coming within either Sections 162, 165 or 212 of the Internal Revenue Code of 1954. The Tax Court reached the conclusion that the expenditure was not deductible under any of the above sections. With this conclusion we disagree.

We find this to be an expense deductible under Section 212. Section 212 of the Internal Revenue Code of 1954 allows the deductibility by an individual of the ordinary and necessary expenses paid or incurred for the production or collection of income or for the management, conservation or maintenance of property held for the production of income. The Government concedes that this section imposes and is subject to the same restrictions and limitations as Section 162 in determining the deductibility of a particular expenditure except for that section's requirement that the expense be incurred in a trade or business. United States v. Gilmore, 372 U.S. 39, 45, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963); Ditmars v. Commissioner, 302 F.2d 481, 486 (2 Cir. 1962). Thus to be deductible under Section 212 these expenses must not only be business expenses, they must also be ordinary and necessary and must bear a proximate relation to the production of taxable income or the management and conservation of property held by the taxpayer for the production of income. Treas. Reg. § 1.212–1(d) (1960).

We think it clear upon the stipulated facts in this case that the origin and purpose of taxpayer's expenditure fall outside of those prohibited categories which the courts have denominated personal as distinguished from business. United States v. Gilmore, supra; United States v. Patrick, 372 U.S. 53, 83 S.Ct. 618, 9 L.Ed.2d 580 (1963). If one considers the claim in its immediate context as settlement of a suit against taxpayer as a director for breach of his fiduciary duty, it clearly comes within the ambit of the court's rationale in Dit-

mars v. Commissioner, supra. There the court allowed under Section 212 sums paid out to settle a charge that the taxpayer had caused a trust to purchase an interest in a corporation for the purpose of obtaining a business advantage to himself.

The court there pointed out that taxpayer's conduct in seeking corporate office had no relation to "satisfying his needs as a human and those of his family", but instead involved a profit seeking motive within the meaning of the statute. But the Tax Court insists that taxpayer's claim in this case be viewed in its broader context as an expense of taxpayer incurred for the purpose and hope of becoming a director of Central, and thus falling within the reasoning of McDonald v. Commissioner, 323 U.S. 57, 65 S.Ct. 96, 89 L.Ed. 68 (1944), where the Court denied taxpayer the right to deduct his expenses in campaigning for a judgeship under this section. Even accepting the Government's categorization of the claim, we think the stipulated facts make it clear that the goal and purpose of the activities of the insurgents out of which this expense arose went far beyond merely placing taxpayer on the Board of Directors of Central. Nowhere does the Tax Court question the motives and purposes expressed by the insurgents in their proxy seeking campaign. Participation by taxpayer, a large stockholder, in such an effort from which he as a stockholder stood to profit entirely out of proportion to a director's salary is clearly activity of a business rather than a personal nature. United States v. Gilmore, supra.

■ Furthermore, this activity appears to us to be within the statutory definition of an ordinary and necessary expense in the factual context in which it was incurred. We think the case is within the reasoning of Trust of Bingham v. Commissioner, 325 U.S. 365, 65 S.Ct. 1232, 89 L.Ed. 1670 (1945), where the Court allowed deduction of attorney fees incurred for defending an income tax assessment and for advice in connection with the termination of their trust. A stockholder's efforts to affect the policies of his corporation through the exercise of his franchise is the most logical and feasible if not the only method of managing, e. g., conserving and maintaining, the income producing property which he holds. It is, therefore, ordinary and necessary within the meaning of the statute. Surasky v. United States, 325 F.2d 191 (5 Cir. 1963).

Those cases in which a person holding small stock interests in a large corporation takes it upon himself to crusade for a particular point of view on a particular issue are distinguishable. J. Raymond Dyer, 36 T.C. 456 (1961). However worthy his motives, he cannot reasonably expect to affect his dividend income or stock value in relation to his corporate investment to such an extent as would justify defining his activity as ordinary and necessary within the terms of the statute. Nor can the situation here be equated to that found in Deputy v. duPont, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416 (1940). There taxpayer's plan to place difficult to acquire corporate stock in the hands of young executives for the future benefit of the corporation bore no such proximity to the production of income or the management of his own holdings as does the activity in this case. We also find those cases in which a stockholder in a close corporation seeks to transfer obvious corporate expenses to his personal return distinguishable. Cf. Rand, 35 T.C. 956 (1961); Kahn, 26 T.C. 273 (1956); Kaplan, 21 T.C. 134 (1953).

Having found taxpayer's deduction to come within the provisions of Section 212, we do not need to consider its deductibility under the other sections which he suggests. Neither on the facts of this case do we find it necessary to decide that expenses are similarly deductible which are incurred in a proxy fight wherein stockholder's immediate purpose is confined to a desire to sit on a Board of Directors where he may enjoy the genuflections of less successful men.

Reversed.