OPINION Ratjm, Judge: Central Foundry Co., the petitioner herein, is a publicly held corporation engaged in the business of manufacturing cast-iron soil pipe and fittings. Its stock is listed on the New York Stock Exchange. In May 1959, after a long and bitterly fought contest for the proxies of Central’s 4,900 shareholders, a group of stockholders-(the “committee”) succeeded in ousting incumbent management from control of Central’s board of directors. The dominant member of the committee, Gondelman, became chairman of the board, and another committee member, Farber, became vice chairman. Nolan, a former president of Central who was also a committee member, was appointed the new president of Central, and Maidman, a fourth member of the committee, became a vice president. Shortly thereafter a special meeting of stockholders was called at which Central’s stockholders were asked by the new management in effect to approve Central’s bearing the entire cost of the 1959 proxy fight, including the costs of legal services, services of .public relations consultants, services of professional proxy solicitors, printing services, and mailing expenses incurred by both sides in soliciting proxies for the May 1959 annual meeting. The stockholders gave their approval, voting 393,840 shares-in favor as against 53,732 shares opposed to a motion to have Central pay the committee’s 1959 proxy solicitation expenses. Since old management had used Central’s funds to pay its expenses of seeking reelection, the stockholders were asked only to ratify those expenditures,, and no reimbursement was necessary. Central claimed both the former management’s expenses and new management’s expenses as deductions on its 1959 corporate income tax return. In his notice of deficiency, the Commissioner disallowed, among other expenses not at issue in these proceedings, the entire amount claimed by Central in 1959 by reason of its payment of the proxy-solicitation expenses incurred by old and new management, as well as the deduction taken by Central on its 1958 income tax return for old management’s proxy expenses (also paid for out of corporate funds) incurred in connection with the aborted 1958 annual meeting,[2] on the ground that these expenditures by Central were not “ordinary and necessary expenses incurred during the taxable years in carrying on your business.” The Commissioner has subsequently conceded that Central’s corporate funds expended to procure proxies for incumbent management were properly deducted by Central in both 1958 and 1959 under section 162,1.E.C. 1954. Thus, the only question remaining for decision is whether Central’s payment of the proxy-solicitation expenses incurred by its new management in successfully deposing the incumbents is similarly deductible. We hold that the payment of these expenses was also ordinary and necessary, proximately related to Central’s business, and therefore deductible under section 162. It is now settled law that costs incurred by a stockholder in a proxy contest may be deducted by him as “ordinary and necessary” expenses under section 212, at least to the extent that they are proximately related to the stockholder’s income-producing activities. Graham v. Commissioner, 326 F. 2d 878, 880 (C.A. 4), reversing 40 T.C. 14; Surasky v. United States, 325 F. 2d 191 (C.A. 5).[3] And the Internal Revenue Service has ruled that it will follow the decisions in these cases, if the expenditures “are proximately related to either the production or collection of income or to the management, conservation, or maintenance of property held for the production of income.” Rev. Rul. 64-236, 1964-2 C.B. 64. Similarly, the Service has ruled that it will follow the decision in Locke Manufacturing Cos. v. United States, 237 F. Supp. 80 (D. Conn.), which allowed deductions under section 162 for like expenditures incurred by a corporation in support of existing management in a proxy fight. Rev. Rul. 67-1, 1967-1 C.B. 28. Of course, like any other “ordinary and necessary” expense, proxy solicitation expenses must be incurred for business (sec. 162) or profit-oriented (sec. 212) purposes, and such expenditures will not be deductible if they are made primarily to satisfy the personal desires or needs of those seeking the proxies. See Dyer v. Commissioner, 352 F. 2d 948 (C.A. 8), affirming a Memorandum Opinion of this Court; Rev. Rul. 67-1, supra. It is on this ground that the Commissioner defends his present position, for he contends that the proxy fight expenses of the committee were incurred primarily for the benefit of the interests of the stockholder-members of the committee who became Central’s new management, and that Central’s payment of their expenses was tantamount to the distribution of a preferential dividend, much as any corporation’s payment of the personal expenses of its stockholders would be. See Challenge Manufacturing Company, 37 T.C. 650. In substance, it is his position that the payment of the proxy expenses here in issue was not proximately related to the business of Central and therefore cannot qualify as an ordinary and necessary business expense of the corporation. We hold otherwise. We think that the proxy fight expenses incurred by incoming management which petitioner paid or reimbursed were just as proximately related to its business as those of ousted management which the Government concedes to be deductible. Without doubt, Gondelman and his associates were inspired to a substantial extent by personal or selfish motives. To conclude otherwise would be to assume a purity of purpose that is contrary to human experience and to exhibit a naivete that is not required of any court. But their campaign was nevertheless as much in the interest of the corporation itself as was the counter-offensive mounted by existing management, which was also obviously motivated by personal or selfish considerations in seeking to perpetuate its control over the corporation. Any assumption that management is never motivated by personal considerations and that the insurgents’ motivations are always personal — a view suggested if not explicitly so stated in the Government’s brief — bears little relation to the real world. A whole complex of factors, both business and personal, may prompt a group of stockholders to start a proxy fight with management, and management’s defense of the status quo may be partly the result of a good-faith belief that it is acting in the best interests of the corporation, but almost certainly also the result of its selfish desire to remain in control. In short, we see no more evidence of a predominance of purely personal rather than business considerations motivating the committee’s expenditures in its attempt to gain control of Central than could be found in management’s desire to see itself reelected in Loche, or in this very case. The proxy rules promulgated by the SEC were plainly intended to promote corporate democracy, and we cannot say that the proxy fight in this case involved matters of corporate policy that were more directly related to Central’s business from the point of view of existing management than from that of the insurgents. A careful examination of the voluminous proxy materials in this record discloses sharp differences respecting corporate policy — some broad and some of a more limited character — and we are satisfied that, notwithstanding the personal interests of both sides, the expenses incurred by each of them were directly related to the business of the corporation. And if the payment of the costs of incumbent management qualifies for deduction as an ordinary and necessary expense under the Loche case, as conceded by the Government, Central’s payment of the insurgents’ expenses is entitled to no less favorable treatment. It must be remembered that the insurgents were successful and that the corporation thereby became the beneficiary of whatever changes in policy their victory might entail. In the circumstances, its payment of their expenses was no less proximately related to the corporate enterprise than the payment of ousted management’s expenses. Nor do we accept the Government’s oversimplified argument that what was involved here was merely a contest over control rather than over corporate policy. In Steinberg v. Adams, 90 F. Supp. 604 (S.D.N.Y.), involving the propriety of payments made by a corporation to defray proxy fight expenses of both sides, Judge Rifkind, after noting (p. 607) that his “own choice is to draw no distinction between the ‘ins’ and the successful ‘outs,’ ” stated that (p. 608) “general policy and personnel do not exist in separate compartments. A change in personnel is sometimes indispensable to a change of policy.” Cf. Rosenfeld v. Fairchild Engine and Airplane Corp., 309 N.Y. 168, 128 N.E. 2d 291. We do not intend to suggest that reimbursement of insurgents’ expenses would be deductible in every case. Rev. Rul. 67-1, supra, after stating the intention of the Service to follow the Locke case, indicated a contrary approach where the expenditures “are made primarily for the benefit of the interests of individuals rather than in connection with corporate policy”; and it stated explicitly that corporate deductions would be disallowed if the expenditures “are in the nature of preferential dividends to stockholders or excessive compensation to officer-stockholders.” But in the present case, the Commissioner in his reply brief explicitly disavows any attempt to characterize the payments as excessive compensation, and we think there is no sound basis upon which to hold that they were preferential dividends. Nor can we find on this record that Gondelman and his associates were corporate “raiders,” concerned primarily with milking the corporation for their own benefit. Rather, we think, as did obviously the voters of a majority of Central’s stock, that they performed a useful service for the corporation.[4] The salaries received by Gondelman and his associates do not appear to be out of line, and the rental paid by Central to one of Gondelman’s corporations for its New York office space was substantially less than it would have been required to pay for comparable quarters. Although there is some aura of self-aggrandizement on the part of Gondelman, we think that, on the whole, the evidence supports the conclusion that the committee’s activities were proximately related to the business of the corporation and the interests of stockholders generally and that the payment of its expenses by Central fairly qualifies as an ordinary and necessary business expense of the corporation. Although not squarely in point, a helpful analogy may be found in the cases permitting a corporation to deduct amounts paid to a stockholder to reimburse him for expenses incurred in a successful derivative action brought by him against the corporation and its officers or directors for malfeasance, breach of fiduciary duty, or other illegal acts. Larchfield Corporation v. United States, 373 F. 2d 159 (C.A. 2),[5] modifying and affirming 243 F. Supp. 926 (D. Conn.) and 203 F. Supp. 821 (D. Conn.); Shoe Corporation of America, 29 T.C. 297, acq. 1958-1 C.B. 6; B. T. Harris Corporation, 30 T.C. 635, acq. 1958-2 C.B. 5. Cf. Charles Kay Bishop, 25 T.C. 969, 973, acq. 1956-1 C.B. 3. In such stockholder suits the corporation is generally a party defendant and the expenses incurred are those of the plaintiff-stockholder,, but the corporation’s reimbursement thereof is treated as its own deductible expense on the theory that the matter is proximately related to the corporation, and the results achieved in the litigation are thought to be beneficial to it.[6] Thus, even though the expense might have been deductible by the stockholder if it had not been reimbursed, it nevertheless becomes an allowable deduction to the corporation when paid by it. Shoe Corporation of America, supra, 29 T.C. at 307. Similarly here, had the committee members borne the ultimate burden of the proxy fight costs they would have been entitled to deductions therefor (as. has been recognized in Graham, Surasky, and Rev. Rul. 64-236, supra at 248), but payment thereof by the corporation in the present circumstances calls for allowance of the deduction to it. To be sure, a stockholder suit is not the same as a proxy fight. But both often involve an attempt by minority stockholders either to vindicate corporate rights or to effect a change in management in order to vindicate such rights or to bring about a change in corporate policy. And if the proxy fight is concerned in substantial part with an effort to change corporate policy for the benefit of the corporation, as we think was the case here notwithstanding other possible motives, it would seem that the payment of the minority stockholders’ expenses, should similarly be deductible. Certainly, in cases where the stockholder has a choice of remedies, either to bring a derivative action or to engage in a proxy contest, deductibility should not turn upon which remedy was selected. In the present situation, of course, it seems unlikely that the derivative suit would have been available as an effective remedy, since the issues revolved largely around matters of alleged poor judgment in management rather than specific acts of malfeasance.[7] The problem of proximate relationship to the corporate, enterprise, however, remains the same. Reviewed by the Court. Decision will he entered under Rule 6(f.. The committee neither sought nor received from Central nennbursemenit for similar expenses incurred in soliciting proxies for use at the 1958 annual meeting (both the meeting originally scheduled for May 13, 1958, and the one rescheduled for Sept. 26, 1958). Consequently, those expenses were of course not deducted by Central and are not at issue in these proceedings. Cf. Alleghany Corporation, 28 T.C. 298. The motion to approve payment of the committee’s expenses was adopted by a vote of nearly 8 to 1 including the votes of members of the committee and 4 to 1 without taking such votes into account. Of course, as was made clear in Larchfield, to the extent that the expenses might be capital in nature — e.g., in a suit to recover specific property — , no deduction would be available for that reason. In many, If not all, of such stockholder suits, reimbursement of the successful stockholder-plaintiff may be provided for in the decree in such litigation. However, to be: deductible as an ordinary and necessary business expense, it is sufficient that the expenditure be proximately related to or appropriate and helpful to the conduct of the taxpayer’s business; it need not be required. See Commissioner v. Pacific Mills, 207 F. 2d 177, 180-181 (C.A. 1), affirming 17 T.C. 705; Waring Products Corporation, 27 T.C. 921, 929; Blackmer v. Commissioner, 70 F. 2d 255 (C.A. 2); 4 Mertens, Law of Federal Taxation, sec. 25.09. The Government’s suggestion that if the stockholders were dissatisfied with the manner in which the corporation was being managed they could sell their stock appears to be-entirely too cynical a view. The stockholders were entitled to stand their ground, or even, increase their holdings, and to seek such relief as might be afforded either through a derivative suit or through a proxy contest. Cf. Graham v. Commissioner, 326 F. 2d at 880.