THE STATE EX REL. R. E. FUNSTEN COMPANY v. WILLIAM D. BECKER ET AL., Judges of St. Louis Court of Appeals.—1 S. W. (2d) 103.

Division One, December 7, 1927.

*M. N. Sale* for relator.

*Gustave A. Stamm* for respondents.

ATWOOD, J.—This is a proceeding by *certiorari* to quash the opinion and record of the St. Louis Court of Appeals in the case of Universal Paper Products Company, a corporation, v. R. E. Funsten Company, a corporation.

From respondents' opinion it appears that the suit was based upon a written contract dated April 23, 1921, by which plaintiff agreed to make 50,000 fourteen-ounce paper cartons to be embossed and printed in colors and used in packing stuffed dates. They were to be shipped from plaintiff's factory in Clyde, Ohio, to defendant at St. Louis, Missouri, within sixty days, but time of delivery having been waived by defendant it is not an issue in the case. The cartons were delivered about five months after date of contract, and were rejected by defendant on the ground that they did not comply with the contract. Whether or not they did comply was the real issue in the case.

It appears that for many years defendant had been purchasing cartons of this kind from another company in New York, but plaintiff, through its representative, solicited this order from defendant. Plaintiff was furnished by defendant with samples, and throughout all the correspondence between the parties it was insisted that the cartons to be furnished by plaintiff should be as near like the sample furnished by defendant as possible. However, plaintiff failed to furnish defendant with proof of the final and finished carton after the embossing had been completed, and when shipment of the 50,000 fourteen-ounce cartons was received September 27, 1921, defendant advised plaintiff that it could not use them because they were not in accordance with the contract. Defendant's evidence disclosed that it was compelled to go out and purchase 50,000 fourteen-ounce cartons elsewhere and pay a greater price, for which it claimed damages by way of counterclaim. The verdict was in favor of plaintiff for $1150 with interest, and also in favor of plaintiff on defendant's counterclaim.

The opinion discloses that on or about September 13, 1921, plaintiff shipped 1200 of the fourteen-ounce cartons to defendant at St. Louis. This shipment was made by express, and reached St. Louis about the 15th or 16th of the same month. About September 20, 1921, defendant sent one of its stockholders, who was a salesman for the company, a Mr. R. F. Funsten, to plaintiff's factory at Clyde, Ohio. Relative to this visit respondents' opinion reads in part as follows:

"The object and purpose of R. F. Funsten's visit to plaintiff's factory is in dispute. Defendant contends that it sent him to the plaintiff's factory for the purpose of ascertaining why a certain shipment of four-ounce cartons has not been made, which shipment plaintiff had been promising to make for several weeks prior to that date. The plaintiff's contention is that this Mr. Funsten was the

general agent of the defendant, and inspected the fourteen-ounce cartons as well as the four-ounce; that he spent something like two or three hours at the factory, examined a portion of each kind of the cartons, and requested that they be shipped at once, and that therefore defendant is bound by his action.''

It further appears that defendant was a family corporation, and R. F. Funsten testified that his brother called him over the telephone and directed him to go to plaintiff's place of business at Clyde, Ohio, and make inquiry concerning the shipment of the four-ounce cartons; that he stayed at the factory probably two hours and went through the factory and saw a part of the fourteen-ounce cartons; that he knew that plaintiff was going to load them that day, and that they were loading fourteen-ounce cartons into the car, and that he told plaintiff's representative, Mr. Leach, that he wanted to get the four-ounce cartons shipped as quickly as possible; that he went there to get delivery of the four-ounce cartons, but that he knew they were shipping the whole 50,000.

Mr. Leach testified for the plaintiff that R. F. Funsten came to his office on the date above mentioned and stated that he had been authorized by his firm to come and see what could be done toward hastening the delivery of the carload of cartons that was yet to be shipped. He says the fourteen-ounce cartons had been completed and packed ready for shipment at that time; that some of the packages were opened, as Mr. Funsten wanted to see how they looked. In opening these packages, he says, they examined some of the fourteen-ounce, some of the four-ounce, and others; that after Funsten looked them over he insisted that plaintiff make immediate delivery. A carload was loaded, and shipment started that day.

Under date of September 23, 1921, defendant wrote plaintiff that it was very anxious for the car to arrive as they wanted to see the fourteen-ounce cartons, because the 1200 that had already been sent were not at all satisfactory, and if the 50,000 were like the 1200 it could not consider accepting them in accordance with the contract.

The trial court gave four modified instructions requested by plaintiff, and modified and gave four instructions on behalf of defendant. Instruction number one in effect told the jury that plaintiff was entitled to recover the contract price of $23 per thousand for the 50,000 cartons shipped defendant on September 20, 1921, provided they found that the 1200 fourteen-ounce cartons delivered defendant by express on September 12, 1921, were substantially the same as those ordered and equal to the samples submitted therefor, and were accepted by defendant, and that the 50,000 subsequently shipped on September 20, 1921, were substantially the same as these 1200 and equal to said samples. Instruction number two told the jury that, if the cartons were ''made substantially equal to the same furnished,''

their verdict should be for the plaintiff on plaintiff's cause of action. The opinion purports to state the substance of instruction numbered 3. This instruction was requested by plaintiff, and as modified and given it is as follows:

"The court instructs the jury that if they find and believe from the evidence that R. F. Funsten was the duly authorized agent of the defendant, and as such agent was authorized and directed by defendant to go to the plant of the plaintiff at Clyde, Ohio, and inspect the cartons then and there being made by plaintiff for the defendant, and you further find and believe from the evidence that R. F. Funsten, as the authorized agent of the defendant, if you so find, did go to Clyde, Ohio, and inspected and accepted for defendant the cartons then made by the plaintiff for the defendant and did, after such inspection and acceptance of said cartons, if you so find, direct the plaintiff to ship said cartons to defendant, and if you further find and believe from the evidence that the cartons so inspected and accepted by said R. F. Funsten, if you find that he did inspect and accept them, were the same cartons which were shipped by plaintiff to the defendant, then your verdict shall be for the plaintiff on plaintiff's cause of action and for plaintiff on defendant's counterclaim."

Respondents' opinion holds that "there was no error in Instruction No. 3." Petitioner's first attack is upon this instruction on the ground that it does not require the jury to find that R. F. Funsten was authorized to accept the cartons sued for, and that respondent's opinion, therefore, conflicts with Dameron v. Hamilton, 264 Mo. 1. c. 116; Cassin v. Lusk, 277 Mo. 1. c. 673; Dunsmore v. Hartmann (Mo. Sup.), 256 S. W. 1. c. 1034; and State ex rel. v. Ellison, 272 Mo. 1. c. 583, holding that an instruction which purports to cover the entire case and authorize a verdict must require the finding of all essential facts. Instruction numbered 3 does purport to cover the entire case and, among other things necessary to be found before a verdict is authorized for plaintiff, it requires the jury to find that R. F. Funsten both *inspected* and *accepted* the cartons for defendants, but nowhere does it require them to find that he was authorized to *accept* the cartons.

It seems clear that authority both to *inspect* and to *accept* were essential facts to be found in this case. Respondents apparently concede this, and in the brief filed in their behalf say: "Under the facts in this case, as found in the opinion, there is no difference between the authority to inspect and the authority to accept." As we read and understand the opinion it neither expressly nor impliedly holds that in this case authority to inspect necessarily includes authority to accept, nor do Nofsinger v. Ring, 71 Mo. 149, or Arkla Lumber Co. v. Quellmalz Lumber Co., 252 S. W. (Mo.) 961, so hold. Certainly, if a principal inspect a thing and pronounce it according to con-

tract before it is packed and delivered, or if he authorize an agent to inspect a thing and also to pronounce whether or not it is according to contract, the principal is bound by his own acts and by those of such agent, because the existence of authority both to inspect and to accept or reject stands admitted. But such is not this case. Here the extent of the agent's authority is the very matter in question. It is true the opinion does say that certain matters were "sufficient evidence from which the jury could find that R. F Funsten was placed in such a position that the plaintiff's manager, Leach, was led to believe that he had authority to inspect and accept, and dealt with him, without negligence, on that assumption." The matters here referred to in the opinion as "sufficient evidence" appear to be alleged acts and statements of R. F. Funsten testified to by Leach, but the extent or scope of his agency could not be proved by what he said or did and any apparent holding by respondents that it could is in conflict with our decisions in Carp v. Ins. Co., 203 Mo. 1. c. 334; Salmon Falls Bank v. Leyser, 116 Mo. 51; Waverly Timber Co. v. Cooperage Co., 112 Mo. 1. c. 389, and many other cases. It also appears that the opinion, in defense of instruction numbered 3, sets up the claim of agency by estoppel and proceeds to find its existence from the evidence, although the existence or non-existence of actual agency and not agency by estoppel was the issue submitted to the jury and upon which they were instructed. This holding is in conflict with In re Guardianship of McMenamy, 307 Mo. 98; Hayes v. Kansas City, 294 Mo. 655; and other cases holding that a cause must be determined, on appeal, on the theory upon which it was tried. It is also in conflict with Missouri Coal Co. v. Willis Coal Co., 235 S. W. (Mo.) 1. c. 123; Degonia y. Railroad, 224 Mo. 1. c. 588, 589, and other cases holding that appellate courts should not invade the province of the jury. Thus the facts found in the opinion which respondents rely upon as showing that in this case authority to inspect was equivalent to authority to accept, themselves in turn depend upon rulings in conflict with our last controlling decisions, and we are driven back to a consideration of the ground of petitioner's first attack.

The record before us discloses that in petitioner's motion for a new trial, which respondents overruled, error was charged in the giving of instruction number 3 because the jury was not required to find the essential fact of authority to accept. This question must have been considered by respondents because when they reached the decision that there was no error in this instruction this question was necessarily and unavoidably involved, and their ruling contravened our last controlling decisions above cited holding that such an instruction must require the finding of all essential facts. [State ex rel. v. Cox, 276 S. W. (Mo.) 1. c. 870.]

Conflicts other than those above discussed and ruled are suggested by petitioner but our views already expressed render their examination unnecessary. The opinion and record before us on review are ordered quashed. All concur.