**J. Raymond DYER (Plaintiff), Appellant,**

**v.**

**UNION ELECTRIC COMPANY, a Corporation, J. Wesley McAfee, its President, Eugene J. Shapiro, its Secretary and Ralph E. Moody, its Director (Defendants), Respondents.**

No. 30071.

St. Louis Court of Appeals.

Missouri.

Dec. 2, 1958.

Motion for Rehearing or to Transfer to Supreme Court Denied Dec. 30, 1958.

**402**

J. Raymond Dyer, St. Louis, for appellant.

Lashly, Lashly & Miller, Jacob M. Lashly, Grove G. Sweet, St. Louis, for respondents.

HOUSER, Commissioner.

This is a suit for specific performance of a contract, with a prayer for equitable damages for delay occasioned by reason of its breach; for a declaratory judgment establishing plaintiff's right under § 475.025, RSMo 1955 Supp., V.A.M.S. as the father of a minor shareholder of defendant Union Electric Company to examine and copy certain of its corporate records, and to enforce a forfeiture of $250 under the penalty provisions of § 351.215, RSMo 1949, V.A.M.S. for each pleaded refusal to submit corporate records for examination.

Plaintiff J. Raymond Dyer is the natural father of Nancy Corinne Dyer, a minor. The latter owns 100 shares of the common stock of Union Electric Company. Defendants are Union Electric Company; its president, J. W. McAfee; its secretary, Eugene J. Shapiro, and the chairman of its board of directors, Ralph E. Moody.

The petition, filed January 3, 1957, alleged an oral contract between plaintiff and defendants based upon an oral offer made by defendants' attorney Robert J. Keefe that if plaintiff cared to submit evidence that the company stock owned by his daughter was given her by plaintiff or bought for her and paid for with plaintiff's own funds "such evidence would be considered in connection with plaintiff's right to examine and copy" the names, addresses, stock holdings and stock cards of the stockholders of the company, and a written offer made by defendants' said attorney that if plaintiff cared to submit evidence of such facts "it will be considered by the company; and your request will be dealt with in the light of that evidence and of the provisions of the Missouri statute (Section 286 of the 1955 Probate Code) to the effect that parents, as natural guardians of their minor children, have custody and care of their estates 'derived from the parents.' " Plaintiff alleged that the offer was accepted by plaintiff; that Robert J. Keefe thereafter undertook to "abandon" the offer under

claim (denied by plaintiff) that plaintiff had rejected the offer. Paragraph 29 of the petition described the contract as "a contract for a specific thing, i. e. the right to examine and copy certain corporate records and obtain the names and addresses, and information respecting the kind and extent of their stockholdings, of stockholders in defendant company," but this differs from the contract actually pleaded in the preceding paragraphs of the petition. (The contract pleaded in the preceding paragraphs, and not the contract pleaded in paragraph 29 of the petition, was the contract sought to be proved at the trial.) It was further alleged that after the acceptance of Mr. Keefe's "offer" Nancy Corinne Dyer at her own request was permitted as a stockholder to inspect and microfilm the corporate records and stock cards; that she microfilm copied 44,000 stock cards but before completing the copying it was necessary for her to quit in order to return to college; that she requested that plaintiff, as her father and next friend in certain prior litigation concerning this subject (see State ex rel. Dyer v. Union Elec. Co., Mo.App., 309 S.W.2d 649) and as her agent and attorney under a power of attorney, be permitted to continue to completion the work of copying the remaining 13,000 uncopied stock cards, which request was denied; that thereafter and on January 2, 1957 plaintiff requested that, in accordance with the alleged contract, he be accorded the right to act for his daughter as her natural guardian in the matter of inspecting and copying said records but that this request, documented by evidence showing that he had bought and paid for the stock purchased for the account of his daughter, was not granted; that the company by its actions repudiated the contract; that 13,000 stock cards remain uncopied; that Nancy Corinne Dyer has turned over to plaintiff as her father and natural guardian, agent, attorney and next friend, the 44,000 microfilm copies she copied; that to plaintiff time is of the essence in acquiring the information on the uncopied cards; that by their breach of contract defendants

were damaging plaintiff and his minor daughter daily and that plaintiff's legal remedy for breach of contract is inadequate.

The answer of defendants realleged the substance of most of the facts stated in plaintiff's petition. Defendants, however, denied that there was no rejection of defendants' offer and stated that plaintiff, by letter, had rejected the "suggestion" made by defendants' attorney, by letter, and alleged the affirmative defense of mootness by virtue of the fact that on January 11, 1957 plaintiff became a stockholder and that upon plaintiff's request as a stockholder he had been permitted to complete and had completed the microfilming of the stock cards, thereby obtaining copies of some 13,000 stock cards not copied by his daughter.

The trial court, after hearing the evidence, found in favor of defendants and ordered plaintiff's cause of action and petition dismissed with prejudice. From that order and judgment plaintiff appealed.

 The court did not err, as claimed, in not finding the existence of a contract, in not entering a decree of specific performance and in dismissing plaintiff's petition for such a decree. If it may be said that the petition sufficiently alleged the formation of a contract, the proof did not support the allegation. The most that plaintiff may be said to have proved was that Mr. Keefe, acting as attorney for defendants, in a conference with plaintiff, offered to recommend to his clients that they permit him to examine and copy the corporate records, if plaintiff would produce evidence establishing that plaintiff had bought his daughter's stock for her with his own funds, and that in a letter Mr. Keefe subsequently stated to plaintiff that if he saw fit to supply the information it would be "considered" by the company. A contract "to recommend" or "to consider" is too vague, indefinite and uncertain to be enforceable by the decree of a court of equity. For instance, a promise

to use one's influence to secure patronage is incapable of enforcement. Bay v. Bedwell, Mo.App., 21 S.W.2d 203, 205. As pointed out in that opinion contracts "to aid and assist," "to use one's best efforts," "to give preference," or "to patronize" a hotel, or "to push the sale" of a particular brand, are not enforceable. 17 C.J.S. Contracts § 36 c. (1). And see Gillen v. Bayfield, 329 Mo. 681, 46 S.W.2d 571. Furthermore, plaintiff neither alleged nor proved that Robert J. Keefe, attorney for defendants, with whom plaintiff corresponded and conferred, had authority to bind defendants to the terms of a contract such as plaintiff sued upon, or that the attorney acted within the scope of his employment. Such proof was necessary in order to hold defendants to a contract resulting from plaintiff's acceptance of an offer made by an agent. General Motors Acceptance Corp. v. Holland, Mo.App., 30 S.W.2d 1087; State ex rel. R. E. Funsten Co. v. Becker, 318 Mo. 516, 1 S.W.2d 103; Johannes v. Union Fuel Co., Mo. App., 199 S.W. 1032. The mere existence of the relationship of attorney and client is not sufficient proof to establish the authority of the attorney to act for his client in the making of a contract. Wonderly v. Martin, 69 Mo.App. 84; Bommarito v. Southern Canning Co., 8 Cir., 208 F.2d 56. Finally, the case for specific performance is moot. Plaintiff and his daughter were acting in concert. Through her actions he gained knowledge of the first 44,000 stock cards. Permission was granted to her to microfilm all of the stock cards. Through plaintiff's own actions, as a stockholder, he gained knowledge of the remaining 13,000 stock cards. He has inspected, secured access to and obtained possession of microfilms of every corporate record to which he sought access by this action. The fact that he acquired the knowledge in different capacities is immaterial, since he and his daughter acted in rapport throughout the entire transaction.

The Court did not err, as claimed, in not declaring the stock inspection rights of plaintiff as the natural guardian of his minor child under § 475.025, RSMo 1955 Supp., Laws 1955, p. 385, § 286, V.A. M.S., and in dismissing plaintiff's petition for a declaratory judgment. The natural guardian statute, in terms, applied only to children's estates "when the same are derived from the parents," which meant *both parents*. The next succeeding section, § 475.030, Laws 1955, p. 385, § 287, V.A. M.S., provided that whenever the estate of a minor is derived from *one parent* letters of guardianship shall be granted (if the court finds the interests of the minor so requires). The estate in question was derived from the father alone, out of his own separate funds, and not jointly from both parents. Plaintiff, who made no pretense that he was a court-appointed guardian, had no right to act as natural guardian because the estate was not "derived from the parents," i. e. from both parents. Plaintiff had an insufficient interest to justify a judicial determination under the Declaratory Judgments Act, Section 527.-010 et seq. RSMo 1949, V.A.M.S., and any decree rendered would have been merely advisory. Contracting Plumbers Ass'n of St. Louis v. City of St. Louis, Mo. App., 249 S.W.2d 502. The case of Oehmen v. Portmann, 153 Mo.App. 240, 133 S.W. 104, holding that where a child derives title to property from her father, he is entitled to its custody as her natural guardian, has no application here because that case was decided under § 403, RSMo 1909, which contained no language limiting its operation to estates of children "derived from the parents."

The action of the court in declining to render a declaratory judgment was proper for yet another reason. All questions relating to the status of plaintiff as natural guardian and his powers and rights as such were moot. The occasion for the appointment of a guardian to enforce the minor's inspection rights had passed and a

declaration of plaintiff's rights as such would have been pointless for three reasons: The plaintiff in fact had long since completed the inspection and copying of the corporate records in question. The stockholders' meeting for which the information was sought had been held on April 20, 1957. Nancy Corinne Dyer had attained her majority on October 17, 1957, thus dispensing with the necessity of a guardian and rendering academic the question of the propriety of her father's act in assuming the role, or of his powers and duties as such. These facts were of record. The rendition of a judgment on the question would have had no practical effect upon any existing controversy at the date of judgment, November 13, 1957.

Another question is raised, i. e. whether under § 475.025, RSMo 1955 Supp., Laws 1955, p. 385, § 286, V.A.M.S., plaintiff could act individually as natural guardian without the joinder of the mother of the child. Having decided the point raised on other bases we need not explore this question.

■ The court did not err, as claimed, in failing to enforce plaintiff's "statutory rights, as his daughter's natural guardian, to the forfeitures provided for" in § 351.215, supra, for the reason set forth above, namely, that as to this stock plaintiff had no right to act as natural guardian for his daughter but could act as guardian for her only by court appointment, since the stock was not derived from both her parents. Furthermore, upon the determination of the equitable issues adversely to plaintiff the court had no jurisdiction to render a judgment for plaintiff upon the ·question of forfeitures. Where the facts

to sustain the jurisdiction of equity have failed of establishment the equity court may not retain the cause and determine rights at law. Krummenacher v. Western Auto Supply Co., Mo.App., 206 S.W.2d 991, affirmed 358 Mo. 757, 217 S.W.2d 473, and cases cited.

■ The court did not err, as claimed, in dismissing plaintiff's cause of action with prejudice without stating findings of fact and conclusions of law. The failure of the trial court, sitting in equity, to announce its findings of fact and conclusions of law is not error. Bank of Brimson v. Graham, 335 Mo. 1196, 76 S.W. 2d 376, 96 A.L.R. 399; Thompson v. Schultz, 222 Mo.App. 268, 296 S.W. 205. Furthermore, the record does not indicate that appellant requested the trial court to make findings of fact and declarations of law so that in no event was the trial court required to do so. Trask v. Arcadia Valley Bank, Mo.App., 230 S.W.2d 501; State ex rel. Luechtefeld v. Arnold, Mo.App., 149 S.W.2d 384; Lundstrum v. City of Excelsior Springs, 302 Mo. 623, 259 S.W. 789.

For the reasons given it is the recommendation of the Commissioner that the judgment be affirmed.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

The judgment of the circuit court is, accordingly, affirmed.

RUDDY, P. J., and ANDERSON, and WOLFE, JJ., concur.