**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**J. Raymond DYER, Defendant.**

**Civ. No. 57C201(1).**

United States District Court
E. D. Missouri, E. D.

Nov. 16, 1959.

See also 22 F.R.D. 229.

Thos. G. Meeker, Gen. Counsel, Securities and Exchange Commission, David Ferber, Asst. Gen. Counsel, Aaron Levy, Asst. Chief Counsel, Mahlon M. Frankhauser, Atty. S. E. C., Washington, D. C., and Harry Richards, U. S. Atty., St. Louis, Mo., for plaintiff.

J. Raymond Dyer, St. Louis, Mo., pro se.

GEORGE H. MOORE, District Judge.

This cause came on to be heard upon the complaint of the Securities and Exchange Commission (hereinafter referred to as "the Commission") praying for an injunction pursuant to Section 18 (f) of the Public Utility Holding Company Act of 1934, 15 U.S.C.A. § 79r (hereinafter referred to as "the Act"), and defendant's answer thereto. A trial on the issues raised by the complaint and answer was held on July 7, 8 and 9, 1958. The Court makes the following findings of fact and conclusions of law, based upon the complaint, answer, and other pleadings and papers, upon the oral testimony and exhibits, and on the briefs and arguments herein.

## Findings of Fact

1. The defendant is a resident of the city of St. Louis in the State of Missouri.

2. Union Electric Company (hereinafter referred to as "Union"), a Missouri corporation with offices in St. Louis, Missouri, is a public utility holding company and is registered as such with the Commission under the Act. Union has issued and outstanding over 11 million shares of preferred and common stocks, both having voting rights. These stocks are owned by over 60,000 shareholders.

3. Defendant is a shareholder of Union and owns 250 shares of the common stock.

4. On February 21, 1957, defendant sent a letter to Union enclosing a proposed communication to stockholders. In said letter defendant requested that Union mail such communication to its stockholders or, in the alternative, to supply him with an up-to-date stockholder list. Union complied with the latter alternative.

5. On or about February 27, 1957, defendant filed with the Commission a Schedule 14B statement. The filing of such statement is prescribed by Rule 14A-1 (17 C.F.R. 240.142-11) of the Commission's proxy regulations for any participant in a proxy solicitation involving an election contest.

6. On February 27, 1957 the Commission issued its order under section 12(e) of the Act, which provided, *inter alia*, that Union and all other persons were prohibited from engaging in a proxy solicitation regarding the voting of any of Union's securities at the regular annual meeting to be held on April 20, 1957 except pursuant to a declaration which the Commission, by order, permitted to become effective.

7. Notice of said order was given to defendant personally on March 1, 1957, and also by telephone and by registered mail.

8. Pursuant to said order of the Commission Union filed its amended declaration, which included its proposed proxy statement and form of proxy of ballot. The proposed proxy statement and form of proxy included, for a vote of stockholders at the scheduled annual meeting, eight proposals submitted or sponsored by defendant.

9. Union was opposed to seven of these proposals and took no position on one, but included these proposals in the management proxy material in compliance with the Commission's proxy regulations.

10. Pursuant to the Commission's order a hearing on Union's amended declaration was held on March 13, 1957 before the Commission's Hearing Examiner. Defendant appeared and actively participated in said hearing.

11. At said hearing defendant filed with the Commission a six-page document, a so-called "mailing piece," and requested that the Commission direct Union to mail the same, at Union's expense, to all the stockholders of Union, along with Union's proxy soliciting material.

12. The substance of that communication, among other things, was to advise the stockholders of the proposals which Union had agreed to include in its proxy soliciting material and of defendant's critical position with regard to the management of Union.

13. At said hearing defendant stated that it was his intention to file a declaration so as to be permitted to solicit proxies in connection with the scheduled stockholders' meeting of April 20, 1957 or any adjournment thereof.

14. During March 1957 defendant had several discussions concerning financing of his contemplated proxy contest. Defendant discussed this subject with his attorney while he was in New York City on March 3 to 5, 1957. Such discussions were also held while defendant was in New York City on March 16, 17 and 18, 1957. Defendant did not get any financial support for his proxy contest.

15. The Commission issued its order on March 21, 1957 authorizing Union to solicit proxies for the scheduled meeting of stockholders. When defendant received a copy of this order on or about March 22, 1957, he understood it that his request that Union be directed to mail to stockholders his so-called "mailing piece," was denied.

16. On March 23, 1957 defendant contacted a local mailing service to arrange for the printing of a postcard and its mailing to stockholders of Union. A draft of his card was prepared by defendant sometime in mid-February 1957. Defendant has testified that "it was prepared as a follow-up piece for my solicitation material."

17. On March 26, 1957 defendant addressed a letter to the Director of the Commission's Division of Corporate Regulation enclosing copies of said postcard. Defendant stated that he intended to mail this material "to security holders, in opposition to declarant's [Union's] proxy solicitations which have, to some extent at least, already gone out." Defendant requested to be advised of "the earliest permitted release date for this material * * *."

18. By letter dated March 27, 1957, the Director of the Division of Corporate Regulation advised the defendant that under the circumstances the mailing of the postcard in opposition to Union's solicitation would constitute a solicitation of proxies and that it would be unlawful for him to mail the same without prior compliance with the Commission's order of February 27, 1957.

19. Notwithstanding this advice, defendant commenced mailing the postcard to the stockholders of Union in the afternoon of March 29, 1957, and the mailing was completed shortly thereafter. By telegram dated April 3, 1957, defendant advised the Commission that the mailing of the communication by him involved "no violation of any order".

20. Defendant had a substantial interest in the outcome of the proxy solicitation by reason of his eight proposals which under the proxy regulation were included in management's proxy statement and form of proxy for a vote of stockholders. In mailing his communication defendant intended to muster stockholder support in favor of his proposals and to counteract management's opposition to seven of his eight proposals.

21. Defendant spent approximately $7,500 for microfilming the stockholders list, preparation of the IBM cards, printing and mailing his communications, and for postage.

22. Defendant received over 100 inquiries or responses from stockholders. Defendant made no reply thereto because of a commitment given to the Court in Chambers on April 9, 1957, when a re-

quest for preliminary relief was pending before the Court.

### Conclusions of Law

1. This Court has jurisdiction of the parties and the subject matter of this cause.

2. The communication in question, mailed to stockholders on and about March 29, 1957, under the circumstances involved a solicitation of proxies.

3. Said solicitation by the defendant was in violation of the Commission's order of February 27, 1957.

4. By order dated July 28, 1958, the Court had dismissed the Commission's complaint on the grounds that the issues raised therein were moot. However, on August 7, 1958, the defendant filed a motion to vacate said order and for a new trial. Said motion is construed by the Court as a proper motion, seasonably taken, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, 28 U.S. C.A. Said motion suspended the finality of the Court's order of July 28, 1958.

5. The Court now concludes that the unique facts and circumstances in the instant cause place it within the purview of the teachings and apparent mandate of the recent case of Dyer v. S. E. C., 8 Cir., 1959, 266 F.2d 33. For reasons stated in that decision, 266 F.2d at pages 46–47, and in view of Dyer v. S. E. C., 359 U.S. 499, 79 S.Ct. 1115, 3 L.Ed.2d 976, reversing Dyer v. S. E. C., 8 Cir., 251 F.2d 512, on the issue of mootness, the Court is of the opinion that the order of July 28, 1958, should be vacated, as requested by defendant's timely motion, but that defendant's request for a new trial should be denied.

6. From an examination and study of the evidence advanced at the three-day trial on July 7, 8, and 9, 1958, the Court is of the opinion that both parties have had "their day in court." Neither party would be prejudiced, and the ends of justice would be served, by a consideration, on the merits, of the issues as developed by the trial record.

7. In the course of the trial the Court has ruled that defendant's so-called affirmative defense based upon alleged bias and prejudice of the Commission was legally insufficient and without merit. To the extent necessary this ruling is now reaffirmed. Cf. Dyer v. S. E. C., 266 F. 2d at page 47.

8. From an examination of the entire record, including the trial record, pleadings, and oral arguments of counsel, the Court concludes that judgment should be entered in favor of the Commission, plaintiff herein, and against J. Raymond Dyer, defendant herein.

Let judgment be entered accordingly.