J. Raymond Dyer and Jean Russell Dyer v. Commissioner.
Dyer v. Commissioner
Docket No. 4499-62.
United States Tax Court
T.C. Memo 1964-200; 1964 Tax Ct. Memo LEXIS 136; 23 T.C.M. (CCH) 1208; T.C.M. (RIA) 64200; July 23, 1964
*136 1. Held, collateral estoppel does not apply in this proceeding against petitioners due to our decision in J. Raymond Dyer, 36 T.C. 456 (1961). The parties in this proceeding are the same as in 36 T.C. 456, supra, but the facts are not the same. 2. Held, certain expenditures made by the petitioners in 1958 were deductible under section 162, I.R.C. 1954, as conceded by respondent at the hearing and in his brief; held, further, certain other expenditures made by the petitioners in 1958 and 1959 were not deductible under either section 162 or section 212 of the 1954 Code. J. Raymond Dyer, pro se, 418 Olive St., St. Louis, Mo. Donald W. Wolf, for the respondent. BLACK
Memorandum Findings of Fact and Opinion The Commissioner has determined deficiencies in the income tax of petitioners for the calendar years 1958 and 1959 in the respective amounts of $427.53 and $385.44. The deficiency for 1958 is due to the following adjustments made to the taxable income as disclosed by petitioners' income tax return for 1958: (a) Schedule "C" loss (decreased)
$2,139.99
(b) Medical expense deduction (de-
creased)
105.30
(c) Schedule "C" Mathematical Error
300.00 The deficiency for 1959 is due to the following adjustments made to the taxable income as disclosed by petitioners' income tax return for 1959: (a) Schedule "C" loss (decreased)
$1,659.41
(b) Medical expense deduction (de-
creased)
10.35
*138 Petitioners, by assignments of error, contest these adjustments made by the Commissioner in his deficiency notice, except the mathematical error determined by him. Petitioners not only contend that there is no deficiency in either year but that, on the contrary, there was an overpayment in each year. Findings of Fact A stipulation of facts was filed by the parties, together with exhibits attached thereto, and it is incorporated herein by this reference. There was also oral testimony and certain exhibits received in evidence at the hearing. Jean Russell Dyer and J. Raymond Dyer, a practicing lawyer, are husband and wife with residence in St. Louis, Missouri. J. Raymond Dyer will sometimes hereinafter be referred to as petitioner. For the taxable years ended December 31, 1958, and December 31, 1959, petitioners filed their joint Federal income tax returns on the cash receipts and disbursements basis with the District Director of Internal Revenue for the Eastern District of Missouri. In the statutory notice of deficiency mailed to petitioners on October 24, 1962, respondent took cognizance of an arithmetical error respecting an overstatement of petitioners' gross profit by *139 $300 on their 1958 return and a 40 cent arithmetical error on their 1959 return. Union Electric Company, sometimes hereinafter referred to as Union, a Missouri corporation with offices in St. Louis, was at all times herein mentioned a public utility holding company with more than 60,000 stockholders holding more than 10,000,000 shares of common stock. Union's outstanding voting securities during the years 1958 and 1959 consisted of approximately 533,595 shares of preferred stock and approximately 10,356,887 shares of common stock. Petitioners' daughter, Nancy Corinne Dyer, born October 17, 1936, was at all times herein mentioned a Union common stockholder whom petitioner represented under power of attorney and during her minority as guardian. Controversy A On December 11, 1956, petitioner, as attorney and guardian for Nancy, demanded access to Union's stock list and the right to copy the stock list. Union denied the validity of the power of attorney and refused the request, contending that under Missouri law a minor could not appoint an attorney. On December 17, 1956, a petition for mandamus and damages was filed in the Circuit Court of the City of St. Louis by petitioner, *140 as the duly appointed next friend of his daughter, against Union and three of its officers - J. W. McAfee, Ralph E. Moody, and E. J. Shapiro - to require production of certain stock books and records of the company for inspection and copy, and for statutory damages of $750 under Mo. Rev. Stat. sec. 351.215 (1949). On December 21, 1956, the petition for mandamus was denied. This judgment was appealed to the St. Louis Court of Appeals on January 21, 1957, and was affirmed on February 4, 1958. State v. Union Electric Company, 309 S.W. 2d 649 (St. L. Ct. Appls. 1958). On March 25, 1958, relator Nancy Dyer through petitioner sought to transfer the case to the Missouri Supreme Court. This transfer was denied on April 14, 1958 (Case No. 46893). During 1958, the expenses petitioner incurred and paid in connection with Case 309 S.W. 2d 649 which respondent disallowed were a 95 cent certification charge paid to the clerk of the St. Louis Court of Appeals on March 19, 1958, and an undetermined part of $10.42, $48.13, $54.37, $2.25, and $3.90 generally incurred for telephone, stationery, postage, notary, and travel expenses, respectively. In 1958, the expenses incurred *141 and paid in connection with Case No. 46893 were a $39 stenographic charge paid on March 25, 1958, and a $10 fee paid to the clerk of the Missouri Supreme Court on March 25, 1958. Petitioner incurred no expenses during 1959 in these cases. Controversy B Although the petition for mandamus was denied, Union, on December 21, 1956, accorded Nancy the right to copy the stock list. She proceeded to make copies by microfilming until January 1, 1957, when she returned to Bryn Mawr College. On December 31, 1956, she requested Union's secretary to allow petitioner, as her natural guardian, to complete the microfilming of the stockholders list since she had to return to college. About three-fourths of the stockholders list had been microfilmed at this time. Her request was denied. On January 2, 1957, petitioner requested access to Union's stock list on behalf of Carmen Kern, a sui juris Union stockholder, as her attorney under power of attorney. His request was refused. Her similar request, made in person that day, was likewise refused. On January 3, 1957, petitioner filed a suit under Mo. Rev. Stat. sec. 507.010 (1949), as natural guardian for Nancy, in the Circuit Court of the City *142 of St. Louis against Union, two of its officers, McAfee and Shapiro, and one of its directors, Moody, seeking specific performance of a contract alleged to have been made by Union's counsel that the company would recognize petitioner as natural guardian of Nancy and grant him stock record inspection rights in such capacity. The suit also asked for the imposition of $750 in penalties against the individual defendants under Mo. Rev. Stat. sec. 351.215 (1949). The court dismissed the suit on November 13, 1957, and notice of appeal from such judgment to the St. Louis Court of Appeals was filed on January 17, 1958. On December 2, 1958, said Court of Appeals held that the issue was moot and affirmed the holding of the Circuit Court. Dyer v. Union Electric Company, 318 S.W. 2d 401 (St. L. Ct. Appls. 1958). On January 16, 1959, plaintiff in that case sought to transfer the case to the Missouri Supreme Court. This transfer was denied on February 9, 1959 (Case No. 47432). During 1958, the expenses petitioner incurred and paid in connection with Case 318 S.W. 2d 401 which were disallowed by respondent were $129.60 paid on May 8, 1958, for a transcript of the Circuit *143 Court proceedings, $10 appeal fee paid on January 17, 1958, to the clerk of the Circuit Court, $148.92 paid on September 23, 1958, for printing brief filed with the Court of Appeals, $71.40 paid on November 3, 1958, for printing a reply brief, and an undertermined part of $10.42, $48.13, $54.37, $2.25, and $3.90 generally incurred for telephone, stationery, postage, notary, and travel expenses, respectively. During 1959, the disallowed expenses incurred and paid in connection with Case No. 47432 were $12 on January 15, 1959, for photostating and a $10 fee paid to the clerk of the Missouri Supreme Court on January 16, 1959. Controversy C On April 1, 1957, petitioner and Nancy filed a suit in the St. Louis Circuit Court against Union, McAfee, David R. Calhoun, and Benjamin M. Loeb, Union's proxy agents, wherein they sought a writ of mandamus to compel Union to issue revised proxy cards containing all of plaintiff's proposed by-law changes, as well as an injunction against the three above-named individuals enjoining them from voting, at the April 20, 1957, meeting of Union's stockholders, any proxy cards not containing all of plaintiff's proposed by-law changes. They also sought *144 "a reasonable attorney's fee." Union's proxy cards had been mailed on March 25, 1957, to the shareholders with its notice of the April 20, 1957, annual meeting. The petition was denied on April 3, 1957, and was appealed to the St. Louis Court of Appeals on April 19, 1957. On April 1, 1958, the Appellate Court held that the suit was moot. State v. Union Electric Company, 312 S.W. 2d 151 (St. L. Ct. Appls. 1958). On May 23, 1958, petitioner and Nancy sought to transfer the case to the Missouri Supreme Court. This transfer was denied on June 9, 1958 (Case No. 47016). During the year 1958, the expenses petitioner incurred and paid in connection with Case 312 S.W. 2d 151 which were disallowed by respondent were 95 cents paid on May 2, 1958, for certification of record, $3.88 paid on May 14, 1958, for photostats, and an undetermined part of $10.42, $48.13, $54.37, $2.25, and $3.90 generally incurred for telephone, stationery, postage, notary, and travel expenses, respectively. During said year the disallowed expenses incurred and paid in connection with Case No. 47016 were $22.50 paid on May 15, 1958, for stenographic services and $10 filing fee paid on May 23, 1958. *145 Controversy D On March 21, 1957, the Securities and Exchange Commission, hereinafter referred to as the SEC, issued its order permitting Union's declaration of proxy material, including its post-effective amendments, to become effective. On March 23, 1957, petitioner contacted Multi-Mail, Inc., a St. Louis mailing service, to arrange for the printing of a post card and its mailing to stockholders of Union. Petitioner and Nancy filed their petition for review of the SEC's order of March 21, 1957, with the United States Court of Appeals for the Eighth Circuit on March 29, 1957. On the same date petitioner and Nancy filed an application for a stay of the SEC's order. The application for a stay was argued on April 8, 1957, and was denied on April 9, 1957. By opinion handed down on January 24, 1958, the question presented by the petition for review was held to be moot and the petition to review was dismissed. Dyer v. Securities and Exchange Commission, 251 F. 2d 512 (C.A. 8, 1958). In May 1958, petitioner filed a petition for writ of certiorari with the Supreme Court of the United States. On May 18, 1959, the petition was granted and the judgment of the United States *146 Court of Appeals for the Eighth Circuit was vacated and the case remanded to the Eighth Circuit for further consideration. Dyer v. Securities and Exchange Commission, 359 U.S. 499 (1959). On October 12, 1959, the Supreme Court entered its order to retax one-half of the costs of the certiorari proceeding against Union. Dyer v. Securities and Exchange Commission, 361 U.S. 803 (1959). The remanded case was argued and submitted on November 17, 1959. The decision was pending at the close of petitioner's 1959 tax year. During 1958, the expenses petitioner incurred and paid in connection with Case 251 F. 2d 512 which were disallowed by respondent were $38.80 paid on May 14, 1958, for a certified transcript, $91.49 paid on February 12, 1958, for printing petition for rehearing, and an undetermined part of $10.42, $48.13, $54.37, $2.25, and $3.90 generally incurred for telephone, stationery, postage, notary, and travel expenses, respectively. In that year the disallowed expenses incurred and paid in connection with 359 U.S. 499 were $91.19 paid on September 9, 1958, to print a reply brief, one-half of $150.29 travel costs incurred on September *147 19-23, 1958, $193.03 paid on May 21, 1958, to print petition for certiorari, $100 fee paid on May 15, 1958, for filing petition for certiorari, and $5 paid on May 14, 1958, for photostating. During 1959, the disallowed expense incurred and paid in connection with Case 361 U.S. 803 was $92 paid on January 13, 1959, for printing. Controversy E On April 9, 1957, the SEC filed a complaint in the United States District Court for the Eastern District of Missouri seeking equitable relief against petitioner. The SEC sought a temporary restraining order and a preliminary and final injunction against defendant's use of the mails or other instrumentalities of Interstate Commerce to solicit proxies, or otherwise engage in a solicitation in connection with the April 20, 1957, shareholders meeting of Union without first complying with its aforesaid order of February 27, 1957, requiring approval of declarations. The SEC charged that petitioner's post card which he mailed to Union's stockholders on March 29, 1957, was a proxy solication. Petitioner filed a counterclaim asking that the SEC investigate and report to the court. By order entered July 28, 1958, the complaint was dismissed *148 on the ground that the action was moot. The counterclaim was dismissed as being outside the court's jurisdiction. Securities and Exchange Commission v. J. Raymond Dyer, 22 F.R.D. 229 (E.D. Mo. 1958). On August 7, 1958, petitioner filed a motion to vacate the order and for a new trial. On November 16, 1959, the District Court denied that motion, entered judgment for the SEC, and permanently enjoined petitioner from soliciting proxies of other Union shareholders, or permitting use of his name for such solicitations, unless he previously complied with the filing requirements prescribed by the SEC and except pursuant to a declaration permitted by the SEC to become effective. Securities and Exchange Commission v. Dyer, 180 F. Supp. 903 (E.D. Mo. 1959). Notice of appeal to the United States Court of Appeals for the Eighth Circuit was filed on May 6, 1960, after the close of petitioner's 1959 tax year. On June 30, 1961, the Court of Appeals vacated the District Court decree, remanded with directions to dismiss the order enjoining petitioner, and affirmed the District Court order dismissing petitioner's counterclaim for lack of jurisdiction. Dyer v. Securities and Exchange Commission, 291 F. 2d 774 *149 (C.A. 8, 1961). Petitioner's motion for a reahearing was denied by the Court of Appeals on August 2, 1961. During the year 1958, the expenses petitioner incurred and paid in connection with Case 22 F.R.D. 229 and Case 180 F. Supp. 903 which were disallowed by respondent were $2.81 paid on October 2, 1958, for a collect telegram, and $2.31 paid on July 3, 1958, for a collect telephone call, $5 paid on August 20, 1958, and $3 paid on August 5, 1958, for photostating and an undetermined part of $10.42, $48.13, $54.37, $2.25 and $3.90 generally incurred for telephone, stationery, postage, notary and travel expenses, respectively. Controversy F Although Union's next annual meeting was not scheduled to be held until April 1958, during 1957 Dyer filed with the SEC, pursuant to Regulation X-14 promulgated under the Securities Exchange Act of 1934, preliminary solicitation material which he had indicated he intended to send to Union's security holders. On October 25, 1957, the SEC issued an order under section 12(e) of the Public Utility Holding Company Act which provided, inter alia, that petitioner, Union, and all other persons were prohibited from engaging *150 in a proxy solicitation regarding the voting of any of Union's securities at the regular annual meeting to be held on April 21, 1958, except pursuant to a declaration which the SEC, by order, permitted to become effective. Subsequently, in 1958, petitioner and Nancy submitted to Union, under Rule X-14A-8 of the SEC's regulations, 11 proposals of resolutions and amendments to by-laws, with notice of their intention to present them for action at the annual meeting. Seven of the proposals were substantially the same as proposals were substantially the same as proposals made by the Dyers at the 1957 annual stockholders meeting which were defeated by over 98 percent of the votes cast thereon. Union thereafter filed its declaration with the SEC, containing its proposed proxysolicitation statement and proxy form. It included therein, for voting on at the April 20, 1958, stockholders meeting, four of petitioner's and Nancy's proposals, indicating that they had originated from petitioner and Nancy and setting out the supporting statement of petitioner and Nancy as to each, and making expression of its own opposition thereto. To this declaration, petitioner and Nancy filed objections. *151 Pursuant to the order of the SEC, hearings on Union's declaration were held on March 6 and 20, 1958, in Washington, D.C. Petitioner attended these hearings on his own behalf and as attorney for Nancy. SEC Docket No. 68-169. On April 4, 1958, petitioner and Nancy filed their petition for review of the SEC's orders of March 21 and 25, 1958, with the United States Court of Appeals for the Eighth Circuit. On the same day they filed an application for a stay of the SEC's orders. Cyrus L. Day, a Union stockholder, was granted leave to intervene as a petitioner and Union was granted leave to intervene as respondent. Day was represented by petitioner. The request for a stay of the orders pending review was denied so that the stockholders meeting was held on April 20, 1958, as scheduled. By opinion handed down on April 10, 1959, the Court of Appeals affirmed the orders of the SEC. Dyer v. Securities and Exchange Commission, 266 F. 2d 33 (C.A. 8, 1959). On July 31, 1959, petitioner, Nancy, and Day filed a petition for writ of certiorari with the Supreme Court of the United States. On October 12, 1959, the petition was denied. Dyer v. Securities and Exchange Commission, 361 U.S. 835 (1959). *152 On December 7, 1959, a motion to supplement the record and a petition for rehearing were denied. Dyer v. Securities and Exchange Commission, 361 U.S. 911 (1959). During the year 1958, the expenses petitioner incurred and paid in connection with Case SEC Docket No. 68-169 which were disallowed by respondent were $20.15 paid February 21, 1958, for stenographic work, $1.21 and $1.43 paid on April 25, 1958, for collect telephone calls, $24.48 paid on March 22, 1958, for multilithing a brief, $123.40 and $95.39 paid for travel expenses incurred on March 5-7 and 20, 1958, respectively. In 1958, petitioner incurred and paid in the entire controversy before the SEC, the Court of Appeals, and the United States Supreme Court an undetermined part of $10.42, $48.13, $54.37, $2.25, and $3.90 generally incurred for telephone, stationery, postage, notary, and travel expenses, respectively. During that year the disallowed expenses incurred and paid in connection with 266 F. 2d 33 were $77.60 paid on July 1, 1958, for auditing and compilation work, $25 filing fee paid on April 4, 1958, $34.48 paid on May 21, 1958, for printing separate brief on mootness question, $175.66 *153 paid on July 11, 1958, for printing brief on merits, 40 cents paid on September 18, 1958, for a certificate of record, $152.49 paid on September 30, 1958, for printing brief in reply to the SEC, $89.76 paid on September 30, 1958, for printing brief in reply to Union, $16.80 paid on April 2, 1958, for photostating, $55.30 and one-half of $150.29 paid for travel expenses incurred on April 17 and September 19-23, 1958, respectively. During the year 1959, the disallowed expenses incurred and paid in connection with Case 361 U.S. 835 were $100 filing fee paid on July 31, 1959, $426 paid on August 4, 1959, to print petition for certiorari, $62.12 paid on October 5, 1959, for printing reply brief, and $123.88 paid on November 4, 1959, for printing petition for rehearing. Controversy G On February 9, 1959, the SEC issued its order under section 12(e) of the Public Utility Company Act which provided, inter alia, that Union and all other persons were prohibited from soliciting any proxy regarding the voting of any security of Union in connection with the annual meeting of Union's stockholders to be held on April 20, 1959, unless pursuant to a declaration filed under section *154 12(e) of the Act and Rule 62 promulgated thereunder which was to have been permitted by the SEC to become effective. Pursuant to said order, Union submitted to the SEC a copy of 10 proposals and accompanying statements in support thereof which petitioner and Nancy submitted to Union for inclusion in its proxy statement and its proxy form and notified Union that it was their intention to present the 10 proposals for action by the stockholders at Union's annual stockholders meeting to be held on April 20, 1959. Union then advised the SEC that, in accordance with the provisions of Regulation 14 promulgated under the Securities Exchange Act of 1934, it proposed to omit nine of the 10 proposals from its proxy statement and form of proxy. Six of the proposals were substantially the same as proposals presented by the Dyers at the 1958 annual stockholders meeting, although four of them had not been included in the proxy statement relating to that meeting, and each of those six was defeated by more than 96 percent of the votes cast thereon. Petitioner and Nancy objected to Union's declaration. The SEC exercised its discretion to hold a hearing and held such hearings on March 5, 6, and 22, *155 1959, in Washington, D.C. Petitioner and Nancy participated in these hearings - SEC Docket No. 68-175. On March 27, 1959, the SEC issued its order permitting Union's declaration of proxy material to become effective in Docket No. 68-175. On April 2, 1959, petitioner and Nancy filed their petition for review of the SEC's order of March 27, 1959, with the United States Court of Appeals for the Eighth Circuit - Case No. 16205. The opinion was not handed down until April 14, 1961, after the close of petitioner's 1959 tax year. During the year 1959, the expenses petitioner incurred and paid in connection with Case SEC Docket No. 68-175 which were disallowed by respondent were collect telegraph expenses incurred on February 9, March 6 and 19, 1959, in the amounts of $4.18, $3.47, and $2.26, respectively, and travel expenses incurred on March 4-8, and 21-23, 1959, in the amounts of $112.89 and $98.60, respectively. During 1959, the disallowed expenses incurred and paid in connection with Case No. 16205 were $258.06 paid on July 1, 1959, for multilithing a brief, $21.22 paid on November 16, 1959, for multilithing a reply brief, $25 filing fee on April 3, 1959, and $7.50 and $3.75 photostating *156 charges paid on April 1 and 3, 1959, respectively. Controversy H In the stipulation of facts the parties stipulated the facts with reference to this controversy, including the amounts expended by petitioner in the litigation styled David Joshua v. California Tanning Co. (Case No. 4837-E). The respondent at the hearing conceded that he erred in disallowing to petitioner the amounts expended in this litigation. Effect will be given to this concession of error by respondent in a Rule 50 computation. Controversy I On September 16, 1958, Union filed a Consolidated Schedule of Rates for Electric Service with the Public Service Commission of Missouri proposing an increase in utility rates. Intermittently, from December 8, 1958, to May 15, 1959, the Commission conducted a hearing on the proposed increases which petitioner and Nancy, Union consumers, opposed on the ground that it was discriminatory, in violation of Mo. Rev. Stat. sec. 393.130(3) (1949), and unlawful under In re Alabama Power Co., et al., 29 P.U.R. 3d 204. On July 16, 1959, the Commission entered a report and order permitting Union's proposed increase in rates to become effective. See 294 P.U.R. 3d 254. *157 On August 3, 1959, petitioner and Nancy filed a motion with the Commission for rehearing. Their motion was overruled and denied on August 4, 1959. On August 11, 1959, petitioner and Nancy filed a petition with the Circuit Court of Cole County, Missouri, Case No. 15736, seeking a review of the July 16, 1959, report and order of the Commission. At the hearing the Circuit Court granted Union's request for leave to intervene as a respondent. At the close of petitioner's 1959 tax year the review was still pending undecided. During the year 1958, the expenses petitioner incurred and paid in connection with the rate increase case which were disallowed by respondent were an undetermined part of $10.42, $48.13, $54.37, $2.25, and $3.90 generally incurred for telephone, stationery, postage, notary, and travel expenses, respectively. On August 11, 1959, petitioner paid a $43 filing fee to the Clerk of the Circuit Court of Cole County in connection with that review proceeding, which expenditure was disallowed by respondent. Controversy J On March 26, 1958, the authorized common stock of Union consisted of 10,500,000 shares of which 10,356,887 shares were outstanding, leaving less than *158 150,000 shares authorized but unissued available for the raising of new capital. In July 1959, Union filed with the SEC a declaration under 15 U.S.C.A., sections 79f and 79g, for approval of an offering and sale of 1,036,602 additional shares of common stock of the corporation, SEC Docket No. 70-3810. On August 17, 1959, the SEC gave notice of the filing and the terms of the declaration through publication in the Federal Register. On August 20, 1959, petitioner wrote a letter to the SEC which, in part stated that the basis of any hearing request that he and Nancy might make with regard to its notice would be to permit them to make a record on the issues of fact and law which they controverted. Petitioner further stated in that letter that Union did not have 1,036,602 lawfully authorized and unissued shares of common stock. Petitioner's reason for this statement was that he believed that the SEC's 1958 order which had allowed Union's proxy declaration to become effective for submitting the proposed amendment to increase the authorized common stock was then pending on a petition for writ of certiorari to the United States Supreme Court. Petitioner also stated *159 in the letter that legally he wanted "to controvert any assumption on the part of the SEC" that it had a right to accord administrative effect to its 1958 order while the review proceedings were pending. On September 3, 1959, without a hearing, the SEC entered an order allowing Union's declaration for the issuance and sale of the stock to become effective. The order further stated that the SEC had considered a request of petitioner and Nancy, as Union stockholders, that a hearing be held and had denied that request. Union offered the 1,036,602 shares of common stock on a basis of a right to subscribe to one share of additional common stock for each 10 shares of such stock held of record on September 10, 1959. Under the employees stock subscription plan any shares of the offering not subscribed for by the shareholders would be offered to the employees of Union. Of the 1,036,602 shares of stock offered for sale, 41,539 shares were not subscribed for by the other shareholders of Union. Petitioner and Nancy each exercised their subscription privilege. Petitioner purchased 15 and Nancy purchased 10 shares of stock under the provisions of Union's stock offer. On October 2, 1959, petitioner *160 and Nancy filed their petition for stay and review of the SEC's order of September 3, 1959, with the United States Court of Appeals for the Eighth Circuit as its Case No. 16347. Union stockholder Cyrus L. Day, represented by petitioner, was granted leave to intervene as petitioner, as was Harry J. Stadin, pro se, and Union was granted leave to intervene as a respondent. Petitioners in that case alleged that the SEC's order granting Union leave to issue 41,539 shares of its theretofore unissued common stock to its employees at a discount, without first offering those 41,539 shares to the common stockholders, violated the preemptive subscription rights accorded Union's common stockholders under its charter. Stay was denied on October 21, 1959. Hearing on the petition for review was not heard until January 25, 1960, which was after the close of petitioner's 1959 tax year. During the year 1959, the expense petitioner incurred and paid in connection with SEC Docket No. 70-3810 which was disallowed by respondent was $93.75 paid on September 23-25, 1959, for travel to and from Washington, D.C. On October 2 of that year petitioner paid a $25 filing fee in connection with litigation in the *161 Court of Appeals in that case, which expenditure was disallowed by respondent. As has been stated in our preliminary statement, respondent disallowed $2,139.99 and $1,659.41 as to 1958 and 1959, respectively, by explaining in the deficiency notice issued in this case as follows: In the preparation of Schedule "C" of your income tax return you deducted the following items as ordinary and necessary business expense and it has been determined that such deduction should be adjusted as shown below for the reason that the disallowed portions of such claimed expense represent expenditures of a personal nature, disbursed in a fight and/or crusade over proxies of Union Electric Company, and are not properly deductible under the provisions of either Section 162 or Section 212 of the Internal Revenue Code of 1954. On October 25, 1957, the SEC issued an order under section 12(e) of the Public Utility Holding Company Act which stated, in part, as follows: The Commission has been informed by J. Raymond Dyer, a stockholder of Union Electric Company ("Union"), a registered holding company, that he proposes to continue to engage in a proxy contest with Union and in furtherance *162 of this purpose periodically to send proxy solicitation material to Union's other stockholders. Opinion BLACK, Judge: The taxable years here involved are 1958 and 1959. We have already stated the deficiencies which the Commissioner has determined for each of the taxable years involved. The Commissioner has pleaded in his answer the issue of collateral estoppel. The petitioners in their reply admit that the parties are the same as were before this Court in a contest of the deficiency in income tax for 1957, see J. Raymond Dyer, 36 T.C. 456 (1961), but petitioners deny that the facts in the instant case are the same as the facts in 36 T.C. 456. Hence, the contentions of petitioners are that the issue of collateral estoppel has no application to this proceeding. We think the petitioners must be sustained in this contention. We do not think that the facts and circumstances involved for the year 1957 in 36 T.C. 456 are the same as the facts and circumstances involved in the present proceeding. In the instant case there is a stipulation of facts in which there are 49 paragraphs and to which stipulation there are attached several exhibits. Manifestly, *163 it would unduly prolong this Opinion to refer in detail to these numerous paragraphs of the stipulation. We think it is sufficient to say that in our judgment the facts and circumstances of the instant proceeding are not the same as the facts and circumstances of the prior proceeding which involved the year 1957, 36 T.C. 456. Therefore, the doctrine of collateral estoppel does not apply. Cf. Cumberland Portland Cement Co., 29 T.C. 1185 (1958). In that case we quoted from Commissioner v. Sunnen, 333 U.S. 591, as follows: And so where two cases involve income taxes in different taxable years, collateral estoppel must be used with its limitations carefully in mind so as to avoid injustice. It must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged. Tait v. Western Md. R. Co., supra. * * * Since we hold that the doctrine of collateral estoppel or estoppel by judgment as it is sometimes called does not apply here, we shall now take up and decide the validity of the deductions which *164 were disallowed by the Commissioner in his determination of the deficiencies. The petitioner in his brief treats these claimed deductions as relating to particular separate controversies and in order to make clear the deductions involved, we shall adopt the method of treating them by controversies. Controversy A The facts with reference to this controversy are detailed in our Findings of Fact and we shall not repeat them here. It seems to us that these expenses were incurred and paid in what amounted to a proxy contest with Union and are not deductible as ordinary and necessary business expenses. See J. Raymond Dyer, supra. In R. Walter Graham, Jr., 40 T.C. 14 (1963), the Tax Court was reversed by the Fourth Circuit, 326 F. 2d 878 (1964). In that case the taxpayer was the holder of a large number of shares in a corporation and the court held that the taxpayer was entitled to deduct as a nonbusiness expense an amount which he paid as his share of a compromise settlement of a minority stockholders' suit brought against him and others who had been reimbursed by the corporation for their costs of securing proxies in connection with the attempt by the taxpayer *165 and other members of the group to unseat the directors of the corporation. The court, in reversing us in that case, referred to J. Raymond Dyer, supra, in the following language: Those cases in which a person holding small stock interests in a large corporation takes it upon himself to crusade for a particular point of view on a particular issue are distinguishable. J. Raymond Dyer, 36 T.C. 456 (1961). However worthy his motives, he cannot reasonably expect to affect his dividend income or stock value in relation to his corporate investment to such an extent as would justify defining his activity as ordinary and necessary within the terms of the statute. * * * We still think our decision in J. Raymond Dyer on this particular point was correct and there is nothing said by the Fourth Circuit quoted above which indicates otherwise. We hold for respondent as to Controversy A. Controversy B The Commissioner is sustained in his disallowance of the amounts incurred and paid in Controversy B. We think these amounts were incurred and paid in what amounted to a proxy contest with Union and are not deductible business expenses. See J. Raymond Dyer, supra.
Controversy *166 C We sustain the Commissioner in his disallowance of the deductibility of these particular items. We think they were incurred and paid in what amounted to a proxy contest with Union and are not deductible as ordinary and necessary business expenses. See J. Raymond Dyer, supra.
Controversy D It seems to us in this controversy, as it did in Controversies A,B, and C that the expenses incurred and paid by petitioner were incurred in what amounted to a proxy contest with Union and under the Findings of Fact made by us in Controversy D, these expenses are not deductible as ordinary and necessary business expenses under section 162. See J. Raymond Dyer, supra.
Controversy E The facts with respect to this controversy are stated in our Findings of Fact. Petitioner contends that the expenditures incurred were for defending his professional reputation as a practicing lawyer. In the case in question the SEC sought a temporary order and a final injunction against defendant's use of the mails to solicit proxies. The SEC charged petitioner's post card which he mailed to Union stockholders on March 29, 1957, was a proxy solicitation. The SEC had expressly advised petitioner that the post *167 card could not lawfully be sent out except if he complied with its order of March 27, 1957. Petitioner contends that the expenses incurred in the SEC injunction case in 1958 are deductible under section 162 of the 1954 Code and under the authority of Paul Draper, 26 T.C. 201 (1956), acq. 1956-2 C.B. 5, also the case of J. Raymond Dyer, supra. Respondent contends that the Draper case and the second headnote in J. Raymond Dyer are not apposite since they involved, in part, expenses incurred in libel actions. It seems plain to us that petitioner's personal "fight or crusade" with Union was the proximate cause of the SEC's seeking a temporary restraining order against him. So far as we can see, the SEC was not attempting to curb or attack petitioner's professional reputation, as contended by him, but only his personal, self-help act of mailing the post cards. We think that the expenditures incurred in this controversy were personal expenses and not deductible as ordinary and necessary business expenses under section 162. Controversy F We likewise hold that the expenses which petitioner incurred and paid in this controversy were incurred and paid in *168 what amounted to a proxy contest with Union and are not deductible by petitioner as ordinary and necessary business expenses under section 162. See J. Raymond Dyer, supra.
Controversy G Petitioners in their brief describe this controversy as follows: Controversy G involved a petition filed April 2, 1959 under the Public Utility Holding Company Act of 1935, by petitioner on behalf of his client-daughter and himself as stockholders of Union Electric Co., in the U.S. Court of Appeals for the 8th Circuit, for stay and review of an SEC order entered March 27, 1959 that permitted the 1959 proxy material of Union Electric Co.'s management to become effective. Stay was denied on April 8, 1959, before the May 18, 1959 decision of the U.S. Supreme Court in Controversy D, * * * was rendered. However, after that decision review was accorded. The decision on review was not rendered until after the close of petitioner's 1959 tax year. Petitioner expended nothing in Controversy G in 1958. The expenditures made in 1959 are detailed in our Findings of Fact. We do not think they are deductible as ordinary and necessary business expenses of petitioner and the Commissioner is sustained in their *169 disallowance. Controversy H Controversy H involved petitioner's professional representation of his client, David Joshua, in a damage suit brought on October 16, 1957, against the California Tanning Co. in the St. Louis Circuit Court. Petitioner expended $14.88 in this suit in 1958 and $58.55 in 1959. At the hearing in this proceeding in St. Louis on October 22, 1963, respondent conceded that the above-mentioned expenditures were allowable business deductions to petitioner and should have been allowed by respondent in his determination of the deficiencies. Effect to this concession by respondent will be given in a recomputation under Rule 50. Controversy I It is plain that the expenses incurred by petitioner in this rate contesting case were not expenditures incurred in any proxy contest such as we have discussed in some of the controversial expenditures heretofore discussed. Petitioner was a consumer of electric current distributed by Union and, of course, had a right to appear at the hearing before the Public Utility Commission and enter his protest to the Public Service Commission of the State of Missouri against such proposed increase in rates, and later to file a petition *170 with the Circuit Court of Cole County, Missouri, seeking a review of the July 16, 1959, report and order of the Commission. It is stipulated that "petitioner paid a $43.00 filing fee to the Clerk of the Circuit Court of Cole County in connection with that review proceeding, which expenditure was disallowed by respondent." Was this expenditure of $43 filing fee by petitioner allowable as a deduction. We do not think it was an allowable deduction to petitioner and the Commissioner is sustained. Petitioner may have been actuated by motives which were altogether worthy in filing his petition for review of the order by the Missouri Public Service Commission granting the increase in rates by Union but we do not think the facts stipulated authorize the deduction claimed by petitioner. Controversy J Petitioner contends that the $93.75 paid for travel to and from Washington, D.C. and the $25 filing fee, both of which petitioner paid, are deductible expenditures to petitioner under both sections 162 and 212 of the 1954 Code. We do not think the facts shown with reference to these expenditures authorize the deductions claimed by petitioner under either section 162 or section 212. Union *171 offered the 1,036,602 shares of common stock on the basis of a right to subscribe to one share of additional common stock for each 10 shares of such stock held. Petitioner exercised his subscription rights and acquired 15 additional shares of stock at the price at which it was offered. His proportionate interest and voting strength in Union was preserved and remained unimpaired. The fact that employees of the company were permitted to subscribe to 41,539 shares of common stock not subscribed for by the other shareholders, after the offer was made by Union, impaired none of petitioner's rights so far as we can see. His contention that he is entitled to deduct the amount involved in Controversy J under sections 162 and 212, we think, is without merit. The Commissioner is sustained in his disallowance of the deductions involved in Controversy J. Decision will be entered under Rule 50.