**J. Raymond DYER and Jean Russell Dyer, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 17892.**

United States Court of Appeals Eighth Circuit.

Dec. 1, 1965.

J. Raymond Dyer, St. Louis, Mo., for petitioners.

Harold K. Wilkenfeld, Atty., Dept. of Justice, Washington, D. C., for respondent. Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Gilbert E. Andrews and Robert A. Bernstein, Attys., Dept. of Justice, Washington, D. C., were on the brief.

Before MATTHES and BLACKMUN, Circuit Judges, and REGISTER, District Judge.

BLACKMUN, Circuit Judge.

J. Raymond Dyer (whom we shall call the taxpayer) and his wife petition for review of a Tax Court decision that there are deficiencies in their cash basis income taxes as jointly returned for the calendar years 1958 and 1959. The deficiencies amount to $417.04 and $362.19, respectively. Judge Black's opinion, not reviewed by the full court, is T.C. Memo 1964–200.

The challenged amounts are attributable to asserted deductions for numerous small expenditures incurred with respect to nine separate "controversies" with Union Electric Company and with the Securities and Exchange Commission. The parties have submitted substantial briefs in support of their respective positions. Judge Black, in his memorandum of 28 pages, has detailed the facts.

The question is whether the expenditures are deductible under § 162(a) of the 1954 Code, 26 U.S.C.A. § 162(a), as "ordinary and necessary expenses paid * * * in carrying on any trade or business", or, with respect to certain of them, under § 212 of the Code as ordinary and necessary expenses paid "for the production or collection of income", or, in contrast, are personal expenses which, under § 262, are not deductible.

Union in 1958 and 1959 had outstanding more than 500,000 shares of voting preferred stock and more than 10,000,000 shares of voting common. Its common shareholders exceeded 60,000.

Taxpayer is a Saint Louis attorney. His daughter Nancy, born in October 1936, owned 100 shares of Union common which the taxpayer had purchased for her in April 1956. Nancy's father represented her under power of attorney and, during her minority, as guardian. Taxpayer acquired 250 shares of Union common in his own right in January 1957.

The nine controversies may perhaps be described as follows:

Controversy A was a state court suit instituted in 1956 by Nancy, through the /taxpayer as her next friend, against Union and others for the right to copy Union's stock list and for three $250 statutory penalties (under Mo.Rev.Stat. § 351.215 (1949)) because of denials of that right. This proved unsuccessful. State ex rel. Dyer v. Union Elec. Co., 309 S.W.2d 649 (Mo.App.1958). However, during the suit's pendency, Union did allow Nancy personally to have the copying privilege anyway. She exercised that privilege in part but was not able at the time to complete her copying.

Controversy B was a 1957 state court action brought by the taxpayer, as Nancy's natural guardian, against Union and others for like statutory penalties and for specific performance of an alleged agreement by which Union consented to let the taxpayer, as guardian, copy its stock list. This suit was also unsuccessful. Dyer v. Union Elec. Co., 318 S.W.2d 401 (Mo.App.1958).

Controversy C was a state court mandamus action by taxpayer and by Nancy, through taxpayer as next friend. It was brought against Union and its proxy agents to compel the issuance, for Union's 1957 annual meeting, of revised proxy cards containing bylaw changes proposed by the plaintiff shareholders and to enjoin the agents from voting proxy cards not containing those changes, and for a reasonable attorney's fee.

This was unsuccessful. State ex rel. Dyer v. Union Elec. Co., 312 S.W.2d 151 (Mo.App.1958).

Controversy D concerned a petition, filed in this court by taxpayer and Nancy, to review a March 1957 order of the SEC permitting Union's 1957 proxy material to become effective, and the petitioners' application for a stay of that order. Union intervened. This court denied the relief requested. Dyer v. SEC, 251 F.2d 512 (8 Cir. 1958). Certiorari was granted, however, and the case remanded for further consideration. 359 U.S. 499, 79 S.Ct. 1115, 3 L.Ed.2d 976. Half the certiorari costs were taxed against Union. 361 U.S. 803, 80 S.Ct. 40, 4 L.Ed.2d 52. The remanded case was argued and submitted in 1959. Eventual decision on the merits went against the petitioners. Dyer v. SEC, 287 F.2d 773 (8 Cir. 1961).

Controversy E was a federal suit instituted by the SEC against the taxpayer for injunctive relief with respect to what was claimed to be his solicitation of proxies for Union's 1957 meeting without first complying with a February 1957 Commission order requiring approval of declarations. The taxpayer counterclaimed with a request that the Commission be ordered to make a specified investigation. The district court eventually dismissed the counterclaim for lack of jurisdiction and also dismissed the Commission's complaint for mootness. SEC v. Dyer, 22 F.R.D. 229 (E.D. Mo.1958). Nine months later this court issued its decision concerning proxy solicitation for Union's 1958 meeting, Dyer v. SEC, 266 F.2d 33 (8 Cir. 1959), cert. denied 361 U.S. 835, 80 S.Ct. 86, 4 L.Ed.2d 75, rehearing denied 361 U.S. 911, 80 S.Ct. 253, 4 L.Ed.2d 181, referred to below. The district court, accordingly, then vacated its order which, in the 1957 case, had dismissed the Commission's complaint for mootness and, instead, granted injunctive relief for the Commission on the merits. SEC v. Dyer, 180 F.Supp. 903 (E.D.Mo.1959). Later this court vacated that decree because of excessive breadth. We remanded the

case, however, with directions to dismiss the Commission's complaint for mootness; we also affirmed the dismissal of the counterclaim. Dyer v. SEC, 291 F.2d 774 (8 Cir. 1961).

Controversy F centered in Union's 1958 annual meeting. Union filed its declaration with the SEC, as required by an order the Commission had issued. This included some but not all of a number of proposals submitted to Union by taxpayer and Nancy. The Commission held a hearing in Washington and issued orders. Taxpayer attended that hearing. The taxpayer and Nancy filed with this court their petitions for review of those SEC orders and for a stay. Another shareholder, represented by the taxpayer, and Union were both permitted to intervene. Stay was denied and the 1958 meeting was held in due course. Later this court upheld the SEC orders. Dyer v. SEC, supra, 266 F.2d 33 (8 Cir. 1959).

Controversy G concerned Union's 1959 annual meeting and Union's declaration of proxy material. Again the SEC held hearings. The taxpayer and Nancy participated. The Commission issued its order permitting Union's declaration to become effective. The taxpayer and Nancy filed with this court their petition for review and for a stay. Union intervened. Stay was denied. The review was decided adversely to the petitioners. Dyer v. SEC, 289 F.2d 242 (8 Cir. 1961).

(Controversy H was an unemployment compensation matter in which the taxpayer represented the claimant. Apparently it had nothing to do with Union or the SEC. At the Tax Court trial the Commissioner conceded the deductibility of expenditures claimed by the taxpayer with respect to that controversy).

Controversy I concerned Union's rates. In 1958 Union proposed increases and filed schedules with the Public Service Commission of Missouri. Hearings ensued. The taxpayer and Nancy intervened in opposition as domestic consumers. In July 1959 the Commission approved the increases. The taxpayer

and Nancy sought a rehearing and then court relief. Union intervened. The petitioners were not successful. State ex rel. Dyer v. Public Serv. Comm'n, 341 S.W.2d 795 (Mo.Sup.1961), cert. denied 366 U.S. 924, 81 S.Ct. 1351, 6 L.Ed.2d 384.

Controversy J had to do with the issuance by Union of additional common shares. The SEC approved Union's declaration and denied a request by the taxpayer and Nancy for a hearing. The two then filed with this court their petition for review and for a stay. Union and two of its other shareholders, one represented by the taxpayer, were granted leave to intervene. The attack asserted preemptive rights in those shares which were not subscribed for on the offering and which Union proposed then to issue to employees at a discount. Stay was denied. The petition for review was unsuccessful. Dyer v. SEC, 290 F.2d 534 (8 Cir. 1961).

The expenses paid by the taxpayer and which remain disallowed as deductions by the Commissioner and by the decision of the Tax Court were incurred, as we have said, in connection with these several controversies (other than H). They consist of certification and filing fees, court costs, expenses of transcripts, and briefs, and those of travel, stenographic, telephone, telegraph, stationery, auditing, photostating, multilithing, notary and postage charges, and the like.

At this point, for what it may be worth, we note the following:

1. The case of J. Raymond Dyer, 36 T.C. 456 (1961), which concerned the taxpayer and Mrs. Dyer's jointly returned income tax for the calendar year 1957. At issue were claimed deductions for business expenses, the expenses of prosecuting a libel suit against a Saint Louis newspaper, and travel and mimeographing expenses incurred in connection with hearings before the Joint Committee on Atomic Energy. The Commissioner had disallowed the deductions on the ground that the expenses were "disbursed by you for a fight and/or crusade by you and your daughter, Nancy Corinne Dyer,

over proxies of Union Electric Company". The Tax Court, in an opinion also written by Judge Black, held that some of the claimed business expenses were not attributable to the proxy contest and were allowable; that that portion incurred in the proxy contest was not deductible under § 162 and § 212 of the 1954 Code; that the libel suit expenses were allowable under § 162; and that the AEC hearing expenses were personal and not deductible.

2. Dyer v. SEC, 290 F.2d 541 (8 Cir. 1961), which was an unsuccessful challenge by the taxpayer and Nancy of action by the SEC with respect to Union's proxy material for its 1960 meeting and with respect to proposals made by the Dyers.

3. Stadin v. Union Elec. Co., 309 F.2d 912 (8 Cir. 1962), cert. denied 373 U.S. 915, 83 S.Ct. 1298, 10 L.Ed.2d 415, where the taxpayer represented an applicant (who was an intervenor in the case reported at 290 F.2d 534, supra) for intervention in an electrical equipment antitrust action in which Union was an original plaintiff.

4. Dyer v. Globe-Democrat Publishing Co., 378 S.W.2d 570 (Mo.Sup.1964), where the taxpayer unsuccessfully appealed from an adverse jury finding in his newspaper libel action.

The Tax Court in the present case ruled that the Commissioner's plea of collateral estoppel by reason of the decided 1957 case, 36 T.C. 456, supra, was not to be upheld because "the facts and circumstances" of that case were not the same as those of this 1958 and 1959 case. See Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 599–600, 68 S.Ct. 715, 92 L.Ed. 898 (1948). The Commissioner has not argued collateral estoppel on this appeal and we do not consider it.

A. *Deductibility.* The parties concede that the deductibility of the expenditures involved in all the controversies except J is governed by § 162 (a). J concerns both § 162(a) and § 212.

Judge Black in his decision found that the expenditures of Controversies A, B, C, D, and F were attributable to "what amounted to a proxy contest with Union" and were not deductible under § 162(a). He cited the taxpayer's 1957 case as supporting that conclusion, for he had there held, p. 464 of 36 T.C., that the taxpayer's proxy contest expenditures "were not ordinary and necessary expenses incurred and paid in his business as a lawyer". Judge Black also held in the present case that the E expenses were not incurred in defending the taxpayer's reputation as an attorney but only "his personal, self-help act" in his personal "fight or crusade" with Union; and that the expenditures of G and I were not deductible under § 162(a) or those of J under either § 162(a) or § 212.

This court on several occasions has considered §§ 162(a) and 212. Recently, in Iowa Southern Util. Co. v. Commissioner of Internal Revenue, 8 Cir., 333 F.2d 382, 385–386 (8 Cir. 1964), cert. denied 379 U.S. 946, 85 S.Ct. 438, 13 L. Ed.2d 543, we observed that there is no "ready touchstone" for these cases, citing Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212 (1933); that the taxpayer has the burden of "clearly showing the right to the claimed deduction", citing Interstate Transit Lines v. Commissioner of Internal Revenue, 319 U.S. 590, 593, 63 S.Ct. 1279, 1281, 87 L.Ed. 1607 (1943); that the question is one of fact, citing Commissioner of Internal Revenue v. Heininger, 320 U.S. 467, 475, 64 S.Ct. 249, 88 L.Ed. 171 (1943) and General Bancshares Corp. v. Commissioner of Internal Revenue, 326 F.2d 712, 717 (8 Cir. 1964), cert. denied 379 U.S. 832, 85 S.Ct. 62, 13 L.Ed.2d 40; and that §§ 162(a) and 212 are in pari materia, citing Trust of Bingham v. Commissioner of Internal Revenue, 325 U.S. 365, 373, 65 S.Ct. 1232, 89 L.Ed. 1670 (1945), and United States v. Gilmore, 372 U.S. 39, 45, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963), both of which concerned the corresponding sections of the 1939 Code. We are also told that "the origin and character of the claim with

respect to which an expense was incurred, rather than its potential consequences upon the fortunes of the taxpayer, is the controlling basic test." United States v. Gilmore, supra, p. 49 of 372 U.S., p. 629 of 83 S.Ct.

With these rules in mind, the non-deductibility of the expenditures under § 162(a) or § 212 appears to be inevitable. To the extent that conclusions of law are involved—and they necessarily are—they flow from the facts found. To the extent findings of fact are concerned, they find ample and almost overwhelming support in the record. Indeed, the very listing of the nine separate controversies provides a vivid outline of the taxpayer's running controversy with Union and with the SEC whenever that agency's posture and duties necessarily propelled it onto the Dyer-Union battleground. This has been a personal struggle, almost a vendetta, with Union. In the present context, the possible existence of an appropriate original reason for one to question management, see footnote 1, p. 573 of 378 S.W.2d, supra, loses significance. And the Commissioner's Exhibit D, hereinafter referred to, which was the SEC's order of September 25, 1957, generally prohibiting proxy solicitation in connection with Union's 1958 annual meeting, except pursuant to an effective declaration appropriately filed, recited:

> "The Commission has been informed by J. Raymond Dyer, a stockholder of Union Electric Company ("Union"), a registered holding company, that he proposes to continue to engage in a proxy contest with Union and in furtherance of this purpose periodically to send proxy solicitation material to Union's other stockholders".

What this court itself has said in the decisions above cited characterizes the several phases of the prolonged controversy or, if one will, of the several controversies, and is in itself almost destructive of the taxpayer's case. We said, in 266 F.2d at pp. 37, 46 and 47, "The result has been that contentions have been multiplied and refined to the point of creating artificiality and almost obsessive pitch", and "the argument which petitioners here make * * * impresses as amounting simply to a desire not to pass up any opportunity to engage in more objections." Further, "It has already been allowed to go beyond the point of any useful purpose that can legally be served, in a matter which increasingly impresses that it is more permeated with the fertility of crusade than the objectivity of advocacy", and "it is apparent, from the three-year history which has up to this point preceded, that the fight of petitioners against the management of Union Electric is one that is going to have an unremitting and indefinite duration." In 287 F.2d, at pp. 776 and 777, we observed that it had "become obvious that the controversy had a personal aspect so far as petitioners were concerned, and that it was likely to remain of a continuing nature", and "This lack of objectivity on the part of petitioners permeates their contentions also in other areas of their sought review. Apparently, their feeling against the management of Union Electric has evolved into an attitude, so as instinctively to make of almost everything a crusader's cause." In 291 F.2d, at p. 775, we spoke of "the time that he [Mr. Dyer] took up the role of antagonist to Union's existing management", and at p. 780 we described the SEC's suit as one "to stop Dyer, in his misguided notion of unqualified privilege of self-defense."

It is true that Mr. Dyer testified that "in the tax years 1958 and 1959 he spent no money whatsoever in a fight and/or crusade over proxies of Union Electric Company, and neither solicited any proxies nor opposed the granting by stockholders of their proxies to Union's management"; that "In none of the controversies * * * were any of his expenditures of a personal nature"; and that all except E "were incurred in the course of petitioner's business as an attorney with full expectation, if successful, of reimbursement along with attorney's fees". It is also true that he claims

to have relied on a contingent arrangement with his client-daughter Nancy for fees and on the availability of fees and reimbursement in successful shareholder actions and SEC opposition matters. He cites Matter of Engineers Pub. Serv. Co., 221 F.2d 708 (3 Cir. 1955). But apart from the fact that much of this is the self-serving testimony of an interested witness, see Schoenberg v. Commissioner of Internal Revenue, 302 F.2d 416, 419 (8 Cir. 1962), it provides at best no more than a conflict in the record. It certainly does not serve to deny the adequate supporting character of the record for the Tax Court's opposing findings. We are not impressed with the taxpayer's argument that because it was stipulated that he "sought" fees and penalties, a conclusion that his expenditures were for ·a business end is inevitable; the conclusion does not flow from the premise.

Although Graham v. Commissioner of Internal Revenue, 326 F.2d 878 (4 Cir. 1964), Surasky v. United States, 325 F.2d 191 (5 Cir. 1963), and Locke Mfg. Co. v. United States, 237 F.Supp. 80, 87 (D.Conn.1964), upheld deductions (the first two under § 212 and the last under § 162(a)) for proxy solicitation expense, we find nothing in these decisions which demands a like holding on the facts here. Those cases involved realistic struggles over corporate control and policy and not what is essentially solitary effort, by way of continuous critical approach to management, on the part of a very minor shareholder or shareholders. Actually, Graham is adverse to the taxpayer for, at p. 880 of 326 F.2d, the Fourth Circuit specifically distinguishes the taxpayer's 1957 case as a situation "in which a person holding small stock interests in a large corporation takes it upon himself to crusade for a particular point of view on a particular issue."

The additional aspects suggested with respect to Controversies E, I and J are no more persuasive. The taxpayer asserts that in E he was defending himself against a charge of willful violation of an SEC order for which if found guilty, he could be disbarred. He cites Commissioner of Internal Revenue v. Heininger, supra, 320 U.S. 467, 64 S.Ct. 249, 88 L.Ed. 171, as supporting authority. In the rate case, I, he essentially asserts that his appearance there was not personal but was on behalf of Nancy, as well as himself, and of a class and with proper anticipation of a fee award. And in the preemptive rights matter, J, he notes that he also represented Nancy and another shareholder with fees and reimbursement of expenses anticipated. We agree, however, with the Tax Court when it says that, as to E, "So far as we can see, the SEC was not attempting to curb or attack petitioner's professional reputation, as contended by him, but only his personal, self-help act of mailing the postcards". We fail to see in that controversy any real jeopardy to the taxpayer's status as a member of the bar. We see, as to I, despite the taxpayer's representation of his daughter, nothing more than personal aspects and personal interest as a consumer-customer in the rate controversy, and we thus conclude that he encounters the barrier of § 262. And we arrive at the same result with respect to J, particularly in view of the fact that the claimed preemptive rights for all three shareholders were directed to a very few shares with small aggregate value. Realistically, the pursuit of substantial litigation for this meager end, in the light of all this record, can equate only with personal interest.

■ B. *Exhibits*. The taxpayer's second line of attack is that certain exhibits were erroneously admitted in evidence and that the record, appropriately deleted, would not support the Tax Court's findings. The exhibits so challenged are Commissioner's Exhibits D (the SEC order of October 1957 reciting that taxpayer had informed the Commission that "he proposes to continue to engage in a proxy contest with Union" and that he "has filed with the Commission * * * preliminary solicitation material"), C (a letter dated January 7, 1958, from Nancy and the taxpayer to Union's vice president and general counsel reciting that "the present management of the

company may expect a proxy contest at the 1958 annual meeting"), E and F (SEC notices and orders of February 1958 and February 1959, respectively), H, I and J (Union's notices of annual meetings of 1958 and 1959 and accompanying proxy statements), and G (the stipulation and the transcript of oral testimony in the 1957 Tax Court file). The objections were on grounds of immateriality and irrelevancy and, although perhaps belatedly, hearsay.

We think that each and all of these exhibits were material. They were integral parts of the controversies and they tended to disclose attitude and to shed appropriate light and color as to the nature of those controversies. Their admission in evidence was not error.

Affirmed.